DOMINY *vs.* MILLER.

The production of a deed of conveyance, upon the trial of an action of eject-
ment, will not entitle a plaintiff to a verdict, when the title is in dispute.
Nor will such evidence put the adverse party upon his defense. The plain-
tiff must show, in addition, either that his grantor and those under whom
he claims had the title or the possession claiming the title.

A person who has been in possession of land for eight or ten years under color
of title may recover, in an action of ejectment, against a mere intruder or
trespasser, or any one who has entered upon the land, except the true owner
or person having the real title.

And such right as he has acquired, under his possession and color of title, he
may grant and convey to another.

It is not necessary that the plaintiff in ejectment should in every case show a
possession of twenty years, or a paper title. A possession for a less period
will form a presumption of title, sufficient to put the tenant on his defense.

Forty-five acres of land, including the premises in dispute, were conveyed to
M. the defendant's ancestor, as one farm or lot, by deed, in the year 1833.
The land was inclosed and occupied, except the premises in dispute, which
were uninclosed but were between the part inclosed and the public highway
and used constantly for the uses of a wood pile, and occasionally for other
purposes, since 1833. *Held* that the case came within the section of the
revised statutes concerning the time of commencing actions relating to real
property, (2 *R. S.* 222, § 10,) and the 4th subdivision of section 83 of the
code; and that within those provisions the premises in dispute were to be

Dominy *v.* Miller.

deemed to have been occupied for the same length of time as the part inclosed and cultivated.

*Held also*, that although there was no express parol evidence that the defendant claimed the title to the premises uninclosed by him, that was to be inferred from the fact that the grant to his father was a grant in fee, and from the manner of his occupation, and the uses to which he applied the premises.

THIS was an action to recover the possession of real estate situate in the county of Suffolk. The action was tried at the Suffolk circuit, in June, 1860, before Justice EMOTT and a jury. A verdict was taken for the plaintiff, for the premises in fee, subject to the opinion of the court at general term, on a case. The opinion of the court contains a statement of all the material facts.

*George Miller,* for the plaintiff.

*W. P. Buffett,* for the defendant.

*By the Court,* BROWN, J. The plaintiff must fail to recover in this action, I think, upon two grounds : First, the failure to show any title in himself; and second, the adverse possession of the defendant and those under whom he claims.

The lands sought to be recovered are two small tracts situate in the town of East Hampton in the county of Suffolk, and said to constitute what was formerly part of a public highway running from the east corner of John Merry's house lot to the three-mile harbor, laid out May 16th, 1700. The commissioners of highways of the town, on the 24th June, 1737, reduced the width of the highway, for its entire length, to nine rods wide. Again in 1746 the commissioners altered the highway, increasing its width to 16 rods or poles, north of the premises in dispute. The plaintiff produced and proved, upon the trial, the town records of East Hampton, showing the laying out and the several subsequent alterations of the highway. But who owned and was seised of the fee of the lands over which the road was laid does not, as far as I understand the evidence, appear. The plaintiff produced no

map, and examined no surveyor, nor did he show expressly that the deeds he produced covered the premises in dispute, any further than the correspondence apparently of the descriptions in the complaint with those in his deeds. I shall take it for granted, however, for all the purposes of this examination, that they are the same. The plaintiff then produced and read three quit-claim deeds for the premises—one from Gardner Miller to Nathaniel Dominy, dated April 5th, 1819 ; one from David Talmage to Nathaniel Dominy, dated February 1st, 1790, and another from Joel Miller, dated February, 1st, 1806. He also proved a devise from the grantee in one of these deeds, who was his great grandfather, to Nathaniel Dominy his grandfather, and a devise by the latter to the plaintiff, dated April 23d, 1852, he being the grantee in two of the several deeds mentioned. He also proved by Jeremiah Miller, a witness called by him, that it was twenty rods from the east side of the nine rod highway to the Talmage premises inclosure, being the same premises purchased by the defendant's father from David Talmage and referred to in the evidence of the defendant, hereafter. The plaintiff also read two other deeds in evidence, for the purpose of locating a corner called Murdock's corner. They are, however, not important, in the view which I shall take of the plaintiff's title. He also examined David Lester as a witness, who said: "I knew David Talmage. He lived in the hook, where the defendant now lives. He had a blacksmith shop just east of his house in the broad street. He worked in it. I am 73 years old. The shop was there as long ago as I can remember. It has been gone now over thirty years. Joel Miller owned a piece of land north of where Mulford Osborn now lives. It adjoined the land of Mulford Osborn. Joel Miller sold this land when he moved into the country, over thirty years ago. Gardner Miller owned the premises where Joel Miller owned and where Deacon Talmage owned. Deacon Talmage has been dead a great many years." On his cross-examination he also said: "I knew these lands. The land

was all inclosed that they owned. The blacksmith shop was not inclosed. The Joel Miller lot was not inclosed. I knew the fence the defendant has put up around the premises in dispute. I never knew either of these two pieces inclosed. I never knew any body in possession of either of these two pieces. I never knew Nathaniel Dominy to be in possession of either, and never heard of it until lately. The town had a poor-house on the north piece, opposite the Joel Miller lot, where the old ditch now is. The building has been gone thirty or forty years." I have quoted the testimony of this witness entire, because there is no other evidence in the case to show the condition of the premises, and who had, and whether any person had, the possession either actual or constructive at the time the quit-claim deeds were given. The case is marked throughout by the absence of any proof to show that the grantors in the quit-claim deeds had any title to the premises granted, or that they had the possession thereof. Nor is there any proof to show that the grantees (the two elder Nathaniel Dominys,) entered and held under the deeds; for the witness Lester says he never knew any one (Dominy or any one else,) in possession of either of the pieces of land. The production of a deed of conveyance upon the trial of an action of ejectment will not entitle a plaintiff to a verdict when the title is in dispute. Nor will such evidence put the adverse party upon his defense. He must show, in addition, either that his grantor and those under whom he claims had the title or the possession claiming the title. A person who has been in possession of land for eight or ten years under color of title may recover in an action of ejectment against a mere intruder or trespasser. (*Jackson* v. *Harder*, 4 *John.* 202.) That is, he may recover against all persons who have entered upon the land, except the true owner or person having the real title. And such right as he has acquired under his possession and color of title he may grant and convey to another. And this is upon the obvious principle that appropriation and possession is the foundation

and origin of all legal title. It is not necessary that the plaintiff in ejectment should in every case show a possession of twenty years, or a paper title. A possession for a less period will form a presumption of title, sufficient to put the tenant on his defense. (*Smith* v. *Lorillard*, 10 *John.* 338.)

In the second place, the defendant showed a good title to the premises by an adverse possession of more than 20 years. He produced and read in evidence a deed of conveyance from Gardner Miller to Benjamin Miller, dated April 6th, 1833, conveying all that " tract of land with the buildings thereon, known and distinguished by the name of homestead, containing about 45 acres, be the same more or less, situate in the town of East Hampton, &c. bounded as follows : westwardly by land of Benjamin Parsons and Joseph Osborne, jun. ; northwardly by the highway ; eastwardly, partly by the highway, and three sides of David Conklin's house lot, and likewise bounded upon three sides of Benjamin Parsons' house lot ; southerly by an highway and a small piece of land at present occupied as common land." The highway which partly bounds the lot upon the east is the same highway leading from John Merry's corner to the three mile harbor, which was first laid out twenty rods wide. The deed carries the grant to the middle of the highway, and includes the premises claimed. The defendant then produced and read the will of Benjamin Miller, the grantor, by which the lands in the deed are devised to the defendant. He was then sworn as a witness, and testified : " My father died in October, 1833. His name was Benjamin Miller. I then came in possession of the premises where I now live, which my father bought of David Talmage. I put up a fence in 1839 or 1840, inclosing a small part of the premises in dispute. Dominy, the grandfather of the plaintiff, was there. He did not like the shape of my yard, and suggested that it be put out further. My wood-pile has been on the premises since 1833. I buried potatoes on the premises the first five or six years I was there, and once or twice or more within the last six, eight or ten

years." He also carted dirt from the north tract to fill up holes in the other tract. The 45 acres including the premises in dispute were conveyed to Benjamin Miller, the defendant's ancestor, by the deed of April 3, 1833, as one farm or lot. It was inclosed and occupied, except the premises in dispute, which were uninclosed, but were between the part inclosed and the public highway, and used constantly for the uses of a wood-pile, and occasionally for other purposes, since 1833. The 4th subdivision of the 10th section of the revised statutes concerning the time of commencing actions relating to real property, provides for just such a case as this. And the 4th subdivision of section 83 of the code is to the same effect. "When a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated." See also *Jackson* v. *Vermilyea,* (6 *Cowen,* 677,) where the same rule is applied to a case like that under consideration. There is no express parol evidence that the defendant claimed the title to the premises uninclosed by him, but that is to be inferred from the fact that the grant to his father was a grant in fee, and from the manner of his occupation, and the uses to which he applied the premises.

The judgment should be entered upon the verdict for the defendant.

[Kings General Term, February 11, 1861. *Lott, Emott* and *Brown,* Justices.]