Doolittle *v.* Tice.

---

## DOOLITTLE *vs.* TICE.

The 85th section of the code, which enacts that for the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only: 1. Where it has been protected by a substantial inclosure; 2. Where it has been cultivated or improved, was intended to provide that a party claiming to hold adversely should protect his claim by the erection of a substantial inclosure, and the language employed means that he shall erect an inclosure around the land, without relying upon a remote fence of a neighbor, inclosing that neighbor's land also.

Although the claimant may avail himself of a fence upon the line, yet it was not designed that a fence located far away from the premises, and including other lands, should be used as a means of protection to a claim of this character.

It was also intended that the inclosure should provide fixed, certain and definite boundaries of the claim made, by which it might be designated, marked and known.

It must be an inclosure of the lot alone, upon the lines claimed by the party, and not embracing premises adjoining, extending, in part, a great distance from the lines.

To constitute a compliance with the 2d clause of the section the land must not only be *cultivated* but *improved.*

Reaping alone cannot be considered cultivating. Nor can the keeping up of a fence already made, mowing the grass, and cutting brush, be deemed an improvement, within the meaning of the statute.

The statute was intended to provide for the ordinary cultivation and improvement of lands in the manner in which they are usually occupied, used and enjoyed by farmers, for agricultural purposes, by sowing, plowing and manuring, and by the erection of buildings, &c. which may add to their value. *Per* MILLER, J

MOTION for a new trial upon exceptions, in a cause tried before Justice PECKHAM, at the Sullivan circuit, in April, 1863, when the judge ordered a nonsuit and dismissed the complaint. The action was brought against the defendant to recover damages for injuries to real property. The defendant interposed an answer of title to the premises. Upon the trial of the cause the plaintiff proved that in 1837 he took possession, and in connection with one Cudney, who had previously occupied the premises in conjunction with other lands, had the premises surveyed. About ten or twelve acres of land were cleared and fenced, except on the line between the lot in question and Cudney's farm. The plaintiff kept up a fence of rails, brush and poles; used the lot for a meadow and cut brush on it. The plaintiff swears that he claimed to own the lot, ever since he occupied it. Cudney's land was also inclosed, except along the line of the land claimed by the plaintiff. There was a log house on the lot, which the plaintiff, after he took possession, occupied, and afterwards let, at different times, to other persons. In 1851 the plaintiff put up a line fence between this lot and the Cudney farm, and in the spring of 1862, the defendant removed the fence, for which alleged trespass the plaintiff claims to recover damages.

The defendant claimed title to the land in question under a deed of the same upon a tax sale, executed by the comptroller of the state, and bearing date the 11th day of January, 1828. The defendant moved for a nonsuit, upon the ground that he had shown title to the premises. The plaintiff claimed the right to go to the jury upon the question of adverse possession, and upon the whole case. The justice refused to submit the case to the jury, and granted the motion for a nonsuit,

and dismissed the complaint. The plaintiff excepted, and the justice ordered that the exceptions be heard in the first instance at the general term.

*A. J. Bush,* for the plaintiff.

*Niven & Thompson,* for the defendant.

*By the Court,* MILLER, J. From the facts elicited upon the trial I incline to the opinion that there was some evidence that the plaintiff claimed to hold the premises in question adversely. Although there is no proof that he claimed title, in so many words, to third parties, yet there are circumstances attending the possession from which it may be fairly inferred that such a claim was actually made by him. He was in possession by himself and by his tenants, keeping up the fences, cutting brush, and mowing the grass. I think these are open and notorious acts, and an unequivocal assertion of title which apprised the world of the nature of his claim, within the principle of adjudicated cases. (*See Lane* v. *Gould,* 10 *Barb.* 254.)

As the plaintiff's claim to hold the premises adversely for a period of twenty years and upwards, was not founded upon a written instrument, or a judgment or decree, he was bound in addition to establish, for the purpose of constituting an adverse possession; First. That the land upon which the alleged trespasses were committed had been protected by a substantial inclosure; or, Secondly. That it had been usually cultivated and improved. (*Code,* § 85.)

As to the first proposition, the evidence shows that prior to 1851 the land was only fenced on three sides, with rails, brush and poles, and there was no fence on the line between this lot and the Cudney farm. The Cudney farm was, however, inclosed with these premises, and it is insisted that this was in fact a "substantial inclosure" of them. The provision of the code referred to was intended to provide that a party claiming

to hold adversely, where his claim was not founded upon a written instrument, or a judgment or decree, should protect his claim by the erection of a substantial inclosure. I think the language employed means that he shall provide the inclosure around the land, without relying upon a distant and remote fence of a neighbor, inclosing that neighbor's land also. And although he may avail himself of a fence upon the line, yet it was not designed that a fence located far away from the premises and including other lands, should be used as a means of protection to a claim of this character. It was also intended that the inclosure should provide fixed, certain and definite boundaries of the claim made, by which it might be designated, marked and known. It must be an inclosure of the lot alone, upon the lines claimed by the party, and not embracing premises adjoining, extending in part a great distance from the lines. It cannot fairly be claimed that the premises in controversy were protected by a "substantial inclosure," because they were inclosed in connection with an adjoining farm. It was not the plaintiff's land, alone, but both together, which were inclosed; a portion of the land being claimed by the plaintiff, and another portion belonging to the adjoining owner. The statute was not intended to provide for the inclosure of other lands, adjoining those claimed adversely, and in furnishing a substitute by adverse possession against a written title, meant that the party thus claiming should designate by boundaries what he actually claimed. This was the title he was bound to make out in place of a higher one. The fence on the Cudney farm did not constitute a part of the inclosure of the plaintiff's land, and there being only a fence upon three sides of the premises I think they were not protected by a "substantial inclosure," within the spirit and meaning of section eighty-five of the code.

As to the second proposition, it was proved that the plaintiff had kept up a fence of brush, rails and poles, which had been previously erected. He had also cut brush (although the na-

Doolittle *v.* Tice.

ture and extent of the labor done in this respect, does not distinctly appear,) and had reaped the grass which spontaneously grew upon the land. All these acts might have been done by a mere trespasser, and there is no evidence that he adopted any of the means usually employed to improve the land so as to increase its value. He erected no buildings, and made no substantial improvements. He never plowed, sowed or tilled the land, and not a single crop was planted upon it by him. He reaped the fruits without really doing any thing to produce them. The land must not only be "cultivated" but "improved." Both cultivation and improvement are essential to make out a case within the provision cited. Reaping alone can scarcely be considered as cultivating; and this was all the cultivation the land received; nor can the keeping up a fence already made, mowing the grass and cutting brush, (with no proof that it was designed to improve the land,) be considered an improvement within the meaning of the statute. I think the statute was intended to provide for the ordinary cultivation and improvement of lands in the manner in which they are usually occupied, used and enjoyed by farmers for agricultural purposes; sowing, plowing and manuring, and by the erection of buidings, &c. which might add to their value. The land of the plaintiff was not thus cultivated and improved, and he does not make out a case within the second subdivision of the section quoted.

Although there was some evidence of adverse possession, yet the plaintiff failing to make out a case in other essential particulars, there was no error in the rulings of the judge; and a new trial must be denied, with costs.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller*, Justices.]