By the Court.
Sedgwick, Ch. J.
The judgment appealed from has awarded to the plaintiff possession of a number of lots on the south side of 107th street, commencing at a point 135 feet easterly from the Third avenue and running easterly 200 feet on that street, and then running 400 feet back to the centre of the block. Formerly, the bank of a creek ran from about the southwesterly corner of the space now occupied by the lot, to about its north-easterly comer. The claim of title made by plaint,iff does not extend to that part, that is southerly of the fine that would be made by the bank, and it would be necessary that the judgment should be modified in this respect, if it were not necessary to hold under the present facts that the judgment should be reversed, because of *488 the plaintiff’s failure to show title to the northerly part of the lots.
The northerly part referred to was, at the time of the earliest deeds in evidence, land under water, over which the tide ebbed and flowed. This land has since that time been filled up, but there was no proof that any one under whom the plaintiff claims has ever been in actual possession of the filled-in land, unless the presumptions upon facts that will be noticed, are that there was such actual possession. It is virtually conceded, that the land of which the bank was a part, did not belong to any ancestor in title of the plaintiff. The plaintiff claims under Peter B. Benson, who, it is virtually admitted, had title to the land on the opposite side of the creek. The creek was a small body of water, that may be called an arm of the Harlem river. As the tide ebbed and flowed in it, the presumption would be that the stream was navigable (People v. Canal Appraisers, 33 N. Y. 472, opinion of Judge Davies). In this case its unnavigability was to be proved by the plaintiff. It is clear that the facts tended to show navigability in fact. The title to the land in question was then in the state or public, or in the city of New York (Mayor v. Hart, 95 N. Y. 443). No conveyance was proved to have been made by the city or the state. It therefore appears that the grantors in the deeds of Johnson to Benjamin Benson and of Benjamin Benson to Peter B. Benson, had no title nor by presumption actual possession of the land. An assumption that a grantor has title, if we assume that the deeds referred to described the land, is no proof of title. The production of a deed of conveyance upon the trial of an action of ejectment will not entitle the plaintiff to a verdict, when the title is in dispute. Nor will such evidence put the adverse party upon his defense. He must show in addition either that his • grantor had the title, that is seizin or possession claiming the title (Dominy v. Miller, 33 Barb. 386). It is hardly necessary to say that being in actual use and occupation of the upland under a deed that extended to low-water. *489 mark would not form an adverse possession of land between high and low-water mark, for it would not be a hostile act as respected the true owner of the land under water. The only testimony as to plaintiff’s remote grantor taking possession of the land in question, is that he, from season to season, cut and took grass on both sides of a piece of water, one side of which it is assumed was the locus in quo. The strongest ground for the assumption that the witness proved that the grass between high and low-water mark was cut, is that sometimes the counsel or witness would call the grass cut sedge. The witness was eighty-five years of age, and it is apparent from her deposition that she understood only a small number of the questions given to her. It is certainly consistent with the testimony that she gave, that the grass she referred to was not grass between high and low-water mark. But if it were, such a fugitive, intermittent act as going upon land, cutting grass and retiring from it from year to year, is not an act manifesting a purpose of taking possession as owner, if there be no other proof. It is' equivocal. It may refer to a claim to own the grass and not the land. It is not continuous enough, of and by itself, to constitute a notice of claim of title likely to reach the attention of the owner. There is no need here of referring to such an act excepting upon the kind of land in question (McFarlane v. Kerr, 10 Bosw. 256 ; Smith v. Levinus, 8 N. Y. 472 ; Yates v. Van De Bogert, 56 Ib. 526 ; Wheeler v. Spinola, 54 Ib. 377). But after a careful scrutiny of the testimony of the witness, I am convinced that she did not, and did not mean to testify that her family cut the grass on both sides of the stream at a point which would indicate this land. The thing she oftenest said, was that the stream she referred to was a sluice, a race, or canal, that her father had made to connect two ponds, one of which was to the west of the land in question, and the other in such a position that the land on each side of the connecting stream would not be near the land in question. The other witness *490 on the same matter gave testimony favorable to the defense. My conclusion on this branch of the case is that the plaintiff faded to prove any title in any of his grantors, and also any possession of the land. I do not perceive that the will of Peter Benson declares in any way, even if his declaration could make a title, that he had been in possession of any land between high and low-water marks. Nor is the keeping possession and using of the dam, any claim of a right to land under the creek to the east of it. The dam could have been used, as ib was, consistently with the ownership of the land to the east being in the public. The most that would be involved would be a claim to a right to have the tide flow over the land in question to the gate in the dam. This action has no regard to such a claim.
I am further of opinion, that the deed on which plaintiff relies for proof of title, does not describe land between high and low-water mark in Harlem creek, between the dam and that river. The description is “all that messuage, being all my estate to the north of- the mill-pond, between the fence of the widow Storm and the road leading to Harlem, including the mill-stream and mill and mill-pond, with all its privileges and appurtenances, and to shut the mill-dam at the south side of said mill-pond, where it now lays.” The only words here that can plausibly be considered to include the premises are “the millstream. ” The learned counsel for respondents claims that the creek to the east of the dam had been artificially made by the Bensons. The evidence does not seem to me to show that labor had been used on any place east of the dam. The mill-stream or canal referred to by Mrs. Van Arsdale and Mr. McG-own was, as I have said, a race or sluice between the two ponds, so that if, in any sense, the creek below the dam was a mill-stream, there were in fact two mill-streams, and the collocation of the words in the description, applied to the physical facts, show that the deed meant the stream between the ponds that kept the mill supplied with a water-power it would have greater *491 than if it depended alone upon the pond nearer to it. But if mill-stream, did mean the creek between the dam and the river, and if the description conveyed the land under the stream, which, however, is not decided, it is not a necessary result that the land in question was meant tobe conveyed. We must take it that the intention was to convey land in which the grantor had an estate. He refers to his estate in the land north of the pond, and is presumed to have referred to such estate as he liad in what was also conveyed. Now, it is manifest, that a stream that ebbs and flows does not describe a quantity of land under it of fixed dimensions. The land between high and low-water mark was not always under the stream and the presumption from the general description of the millstream, would be that the land above low water was not intended to be conveyed in favor of a person owning to low-water mark (Wheeler v. Spinola, 54 N. Y. 377). In this case Benson owned no part of the land under the stream formed by the creek east of the dam. It should not for that reason be inferred that the description was intended to convey more than it would if he had been or claimed to be owner of some of the land.
My opinion is that the judgment should be reversed, and a new trial ordered, with costs to abide event.
O’Gorman and Ingraham, JJ., concurred.