THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, *v.* JOHN BRENNAN and MARGARET BRENNAN, Respondents.

*Deeds — presumption of possession under ancient deeds — title derived from the State — presumption rebutted by proof of adverse holding — adverse possession by cultivation or improvement — who are bound by a judgment.*

Ancient deeds coming from the proper custody may be received in evidence without showing acts of ownership under them, but such deeds do not establish title in the parties to them, or in the plaintiff in the action, in the absence of proof establishing some modern possession by those receiving later deeds, which form part of the plaintiff's chain of title.

Where the State is the original grantor, it is not necessary to prove acts of ownership on its part, as it must be presumed that it possessed the original title.

Where, upon the trial of an action of ejectment, it appears that when a deed was made, in 1849, by a grantor in the plaintiff's chain of title, the premises in question were in possession of a third party, and after his death in that year remained in the possession of his widow and children until 1854, during which period other deeds in the same chain of title were given, the presumption of possession, arising upon the face of these modern deeds, is rebutted. Such deeds are insufficient to establish title in the plaintiff as against the defendants in possession claiming title.

Where parties in possession of land in a city, and their ancestors, have, from time to time, repaired a dwelling situated thereon, and during the earlier years of their occupation fenced the premises, planted trees and cultivated a part of the ground as a garden, and have occupied the premises in the way in which city lots are usually occupied, their acts are sufficient, without any assertion of title, to establish a claim of title thereto.

Persons in adverse possession of premises, not made parties to an action of ejectment (although others in common possession with them are made parties), are not affected by the judgment therein, nor are their interests, as heirs of their brother, who was made a party to the action of ejectment, but who died before a judgment was entered against him therein.

WARD, J., dissented.

APPEAL by the plaintiff, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 16th day of March, 1895, upon the decision of the court dismissing the plaintiff's complaint upon the merits after a trial at the Onondaga Circuit before the court without a jury.

The action was brought in ejectment to recover a small parcel of land in the city of Syracuse. The trial court dismissed the complaint upon the ground that the defendants held the premises by adverse possession.

*Frank Hiscock*, for the appellant.

*William G. Tracy*, for the respondents.

FOLLETT, J.:

This action, ejectment, was begun July 13, 1893, to recover part of lot No. 8 and all of lot No. 9 in block 195 in the city of Syracuse, and for damages for the unlawful withholding thereof. The plaintiff alleges in its complaint that it is the owner in fee of the premises. The defendants in their answer deny that the plaintiff

is the owner in fee, and allege that they are the owners of the fee of the premises.

At the beginning of the discussion about the rights of these litigants the defendants meet the plaintiff with the assertion that the long line of conveyances, beginning with the patent from the State of New York to Abraham M. Walton, dated January 1, 1807, and ending with the deed from Chauncey Vibbard to the plaintiff, dated November 15, 1854, though in form sufficient to carry the fee of the land in dispute from the State to the plaintiff, are insufficient in law for the reason that there is no evidence that any one of the parties to the grants in this chain of title was ever in possession of the land in dispute, and more, that there is no evidence that any one of the parties to these grants was ever in possession of any part of the lands assumed to be conveyed except the plaintiff, who took possession, under the grant from Vibbard, of lots 1 to 7, inclusive, of block No. 195.

The facts asserted in this proposition are established by the evidence. There is no proof in the case that any one of the parties to the grants in this chain of title was ever in possession of the land which is the subject of this litigation, and the learned counsel for the defendants invokes the rule laid down in cases of which *Dominy* v. *Miller* (33 Barb. 386); *Bates* v. *Lidgerwood Mfg. Co.* (50 Hun, 420); *Schrack* v. *Zubler* (34 Penn. St. 38), and *Bonaffon* v. *Peters* (134 id. 180) are types, that the introduction in evidence of deeds which form a plaintiff's chain of title, without showing that the grantors or grantees were in possession of the subject of the grant, does not establish title in them nor in a plaintiff; and in case a plaintiff in ejectment gives no other evidence of title in himself, no case is made out against a defendant in possession. Undoubtedly such is the well-settled general rule, but, like most general rules, it has exceptions. In *Greenleaf* v. *B., F. & C. I. R. R. Co.* (132 N. Y. 408) it was held that ancient deeds coming from the proper custody might be received in evidence without showing acts of ownership under them, but that such deeds did not establish title in the parties to them or in the plaintiff in the action, without showing some modern possession by those receiving later deeds which formed part of plaintiff's chain of title.

The case at bar was tried in October, 1894, forty-eight years after the date of the deed to Robert E. Temple as trustee, so that it and all former grants were ancient deeds, and under the rule declared in the case last cited were admissible in evidence, but are insufficient to establish title in the parties to them unless they are within some exception to the general rule. In this case the plaintiff traced its paper title back to the common source of all land titles in this State — to the State of New York — which is declared by the 10th section of the Constitution to have been the original owner of all lands within the State, and, besides, it is a part of the history of the State that the Indian title to the lands in the county of Onondaga was acquired by treaty, and subsequently the State surveyed and granted all the lands within that county. It was not necessary, in order to show that the State held the legal title of the lands, to prove acts of ownership on its part, for it must be presumed that it possessed the original title. The legal title of the State, which was the original grantor, being established, it will be presumed in the absence of evidence to the contrary — the presumption being a rebuttable one — that the subsequent parties to ancient grants in such a chain of title were in possession under their grants and acquired the title assumed to be conveyed by the grants. The rule is not unlike the one which estops litigants claiming under a common source of title from disputing the title of their common ancestor or predecessor from whom the litigants claim to have derived title. A perfect chain of title conveying the land in dispute from the State to Walton, and from him through mesne conveyances to Robert E. Temple, who acquired title January 9, 1846, is disclosed by the evidence, and it must be held that he was the owner of the land in fee simple. October 14, 1849, Robert E. Temple assumed to convey this land to John Townsend, and at this point the difficulty in the plaintiff's title begins. At the date of this deed John Brennan, the father of these defendants, was in possession of the lands in dispute, and had been for two years. It does not appear when he entered into possession, it simply appearing that he was in possession in 1847; nor does it appear under what right or authority he took possession. There is no evidence that John Townsend was ever in possession of the lots in dispute, or of any part of the land described in the grant to him. December 20, 1850, John Townsend quit-claimed his

interest in an undivided half of the disputed lands and of adjoining lands to Augustus James, at which date the widow and five children of John Brennan were in possession of lots 8 and 9, and there is no evidence that Augustus James was, or that his heirs were, ever in possession of any part of the land described in the grant to him.

In 1852 John Townsend began an action to partition block No. 195, and a judgment of partition was recovered. The widow and children of John Brennan, then in possession of lots 8 and 9, were not parties to that action. At some time block 195 was divided into nine lots and numbered from 1 to 9, inclusive. When this was done does not appear, but perhaps it was done for the purposes of the sale under the judgment in partition. November 1, 1853, the sheriff of the county of Onondaga, pursuant to the judgment in partition, sold the nine lots to Chauncey Vibbard, and on the same day he assumed to convey each one of the lots to Vibbard by a separate deed, all of which deeds were recorded May 3, 1854. At the date of these deeds the widow and five children of John Brennan were still in possession of lots 8 and 9, and no attempt was made on the trial to show that Vibbard entered into possession of any of the lots.

November 15, 1854, Chauncey Vibbard assumed to convey the nine lots to the plaintiff by a deed recorded December 30, 1854. At the date of this deed the widow and five children of John Brennan were in possession of lots 8 and 9, and there is no evidence tending to show that the plaintiff ever had possession of either lot, but the case does show that the plaintiff entered into possession, under the Vibbard deed, of lots 1 to 7, inclusive.

Under this state of the evidence the presumption arising from the face of the deeds subsequently to the deed to Walton, in the chain of title from the State, that the grantors and grantees in those deeds were in possession of the premises, is rebutted, and the deeds, Townsend to James, the sheriff to Vibbard, and Vibbard to the plaintiff, were insufficient, under the rule laid down in *Dominy* v. *Miller* (*supra*), and other cases, to establish title in the plaintiff as against the defendants in possession claiming title.

One other document is relied on by the plaintiff to establish his title — the judgment in ejectment recovered June 21, 1871, by it

against Johanna, Charles and James C. Brennan. Before consider-
ing the effect of this judgment it will be important to consider who
were then in possession of the premises. Mary Brennan, the eldest
child of John, remained on the premises from the death of her
father until her marriage, but when she married does not appear.
She died in 1868, but whether she left a husband or descendants
does not appear, nor does it appear whether she died intestate.
James C. Brennan lived on the premises until he married, and then
lived elsewhere. When he was married does not appear, but probably
after 1870. April 29, 1868, Johanna Brennan, by a deed recorded
June 3, 1868, quit-claimed her interest in the two lots to Charles
Brennan and James C. Brennan, and on the same day the grantees
mortgaged the premises to John D. Silcox, which mortgage was
recorded June 3, 1868. Whether Mary Brennan died before or
after the date of this deed does not appear. In 1870 the plaintiff
in this action brought ejectment against Charles Brennan, James C.
Brennan and Johanna Brennan, for the recovery of the premises in
dispute. The defendants answered jointly. At the time this action
was begun, the widow and all the children of John Brennan were
living on the premises, except Mary, who had married and died.
John Brennan and Margaret Brennan, though then occupying the
premises, were not parties to that action. September 8, 1870, while
the ejectment suit was pending, Charles Brennan died intestate, leav-
ing his brothers and sister his heirs and next of kin. The ejectment
action was not revived nor continued, nor was any suggestion of the
death of Charles entered upon the record. After his death, the
ejectment action was tried, and, June 21, 1871, a judgment in eject-
ment was in form entered against Johanna, James C. and Charles
Brennan. By this judgment the interests of Johanna and James C.
Brennan were cut off, but the interests of John and Margaret, the
defendants in the present action, were not affected by the judgment,
for they were not parties to the action; nor were their interests
acquired by the death of Charles Brennan affected by the judgment
entered after his death, upon a trial which occurred after his death.
This judgment was never enforced, and it does not, as against these
defendants, establish title in the plaintiff. James C. Brennan left
Syracuse in 1881 or 1882, since which time he has not been heard
from, and whether he is living or dead is unknown, but the pre-

sumption is that he is dead. (Code Civ. Proc. § 841.) Whether his wife is still living or whether he had children does not appear. Johanna Brennan resided on the disputed premises until March, 1892, when she died intestate. This disposes of the widow and three of the children of John Brennan, leaving the two defendants in this action on the premises, both of whom were born thereon; Margaret in 1847 and John, October 11, 1848; both of whom have continually resided thereon from the dates of their births. The evidence shows that the Brennans from time to time repaired the dwelling, and, during the earlier years of their occupation, fenced the lots, planted trees, cultivated part of the ground as a garden, and have occupied the premises in the way in which city and village lots are usually occupied, none questioning their title or possession during all these years.

Section 372 of the Code of Civil Procedure provides:

"§ 372. For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases, and no others:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved."

In order to constitute adverse possession, it is not necessary that all three of the conditions exist If the existence of any one of the three is established, it is sufficient. In this case it is established that the premises in dispute were both cultivated and improved in the manner in which such lots are usually cultivated and are usually improved in cities and villages. A claim of title may be made by acts alone as well as by assertions. (*La Frombois* v. *Jackson ex dem. Smith*, 8 Cow. 589; *Barnes* v. *Light*, 116 N. Y. 34.)

Under the evidence, the learned trial court well held that the plaintiff had failed to meet the requirements of section 365 of the Code of Civil Procedure by establishing that "the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question, within twenty years before the commencement of the action."

The judgment should be affirmed, with costs.

All concurred, except WARD, J., dissenting.

WARD, J. (dissenting):

This action was brought to recover the possession of a city lot in the city of Syracuse, being 58 feet front on the south line of Water street, 101 feet in rear, and 130 feet deep, which was occupied at the commencement of the action by the defendants (the respondents here). The trial court made no findings of fact further than may be implied from the following statement in the decision: "The ground upon which the issues are decided in the action are that the defendants and those under whom they claim have been in the actual, continued and peaceful occupation of the premises described in the complaint, under a claim of title, holding the same adversely to the plaintiff and all other persons for more than twenty years prior to the commencement of this action. And that the plaintiff at the time of the commencement of this action had no right to the possession of the said premises."

The appeal here is upon the facts as well as the law. Section 1022 of the Code of Civil Procedure provides that, "whenever judgment is entered on a decision which does not state separately the facts found, the defeated party may file an exception to such decision, in which case on an appeal from the judgment entered thereon, upon a case containing exceptions, the Appellate Division of the Supreme Court shall review all questions of fact and of law, and may either modify or affirm the judgment or order appealed from, award a new trial, or grant to either party the judgment which the facts warrant."

When the appeal herein was taken (March 15, 1895), the last provision quoted from this section, viz., "or grant to either party the judgment which the facts warrant," was an amendment to this section that was made in 1895, and did not take effect until January 1, 1896. Waiving, however, the question whether this section of the Code, as amended, applies to this appeal, this court plainly has authority under this section of the Code, as it stood before this amendment, to review the case upon the facts as well as the law, in the absence of the findings of fact.

The New York Central Railroad Company obtained title to the premises in question in 1854. These premises were adjacent to, if not a part of, lands used by this railroad company in the city of Syracuse in connection with their railroad, and for a freight house, coal shed and coal office.

The land in question is bounded on the north by Water street, on the east by the Onondaga creek, on the south by a retaining wall built by the plaintiff some fifteen feet high laid in mortar, and on the west, first, by a fence and freight house constructed and built by the plaintiff, and afterwards by a coal shed which occupied the place of the freight house and the fence connecting the freight house with Water street.

In about the year 1847, John Brennan, the father of the defendants, took possession of the premises and occupied a little house upon the lands near the creek which was built of boards, not lathed or plastered, being, as we should judge from the evidence, what would be called a shanty of cheap construction, boarded up and papered inside. John Brennan continued to occupy the premises until 1849, when he died, leaving his wife, Johanna, and five children, named, respectively, Charles, James and Mary, and the defendants John and Margaret. John at the time of the trial was forty-eight years old and Margaret forty-nine. The family lived on the premises until Charles and Mary died without issue. Mary died in 1868. Charles died in 1870, and thirteen or fourteen years before the trial James utterly disappeared and has not been heard of since. The widow, Johanna, and the defendants continued to reside on the premises in this house until 1892, when the widow died. The defendants remained on the premises until the commencment of this action (July 13, 1893).

In 1868 or 1869, the occupants of this property built a fence along its front on Water street, which remained until it rotted down and disappeared eight or nine years afterwards. No repairs were put upon this fence, and for nearly twenty years before the commencement of this action there has been no fence in front of the premises, but they have been open to the street. The side on Onondaga creek has not been fenced, but remained open to the creek. In consequence of high water in the creek the house became affected with water and was removed to a higher point upon the land in dispute. The land was not cultivated in any manner, except wild grass grew, which was cut on portions of the lot each season. The Brennans had a small place where flowers were cultivated and a few vegetables. The land was reasonably level and seemed to be capable of cultivation. Underbrush grew upon the

premises, which was cut as well as the grass. The Brennans planted a few apple, peach and plum trees upon the premises. The time of such planting does not appear, but the trees grew to a reasonable size. From the house a board walk was kept up to Water street. Whether Onondaga creek was sufficiently large and deep to afford a protection to the east side of the premises does not appear, but no point seems to be made but what it was. The Brennans paid taxes upon the premises from 1868 to 1871, inclusive, and for no other years.

The above facts as to the use and situation of the property seem to be fairly established by the evidence.

On the 29th of April, 1868, the mother, Johanna, executed to two of her sons, Charles and James, a quit-claim deed of the premises in controversy, which was recorded in Onondaga clerk's office June 3, 1868. On the same day the grantees in this deed executed a mortgage to John D. Silcox, of Syracuse, to secure the payment of $2,000, payable in sums of $250 annually, with interest until paid.

On the 24th of June, 1871, a judgment was obtained by the plaintiff in this action against Johanna Brennan, Charles Brennan and James T. Brennan, the parties to the deed above mentioned, in an action of ejectment to recover from them the possession of the premises in question. The defendants had therein appeared and answered, denying the plaintiff's title and its right to recover, and, by a stipulation of the attorneys, it was referred, and the referee had decided that, at the time of the commencement of that action and at the time of such decision, the defendants were in the wrongful possession of said lands and premises and wrongfully withheld such possession from the plaintiff; that the plaintiff was the owner in fee of the land and entitled to the possession thereof, and judgment was directed accordingly, with costs, and the said judgment was entered upon such decision. It does not appear that any further steps were taken to enforce the said judgment, but, after the same was entered, the defendants in this action occupied the premises as before stated.

The complaint in this action is the usual complaint in ejectment to recover the possession of the property. The answer of these defendants consists of a denial of the plaintiff's title, an admission that they are in possession of the premises, an averment that they

are the owners of the premises and rightfully in the possession thereof; and the fifth answer is as follows: "The said defendants, for a further answer, say that they and the persons from and under whom they claim title thereto have been in possession and enjoyment of all the lands described in the complaint for more than twenty years immediately prior to the commencement of this action, during all said time claiming to own the same in fee simple; and that, during all of said time, they have lived in a dwelling house situate thereon, and have occupied, enclosed and cultivated the said lands as such owners; and that, during all of said time, they have held the same adversely to the said plaintiff and all other persons under a claim of title thereto and as the owners of the fee therein; and that such occupation, possession and use of said premises during all that time has been uninterrupted and peaceful and under a claim of title thereto in said defendants."

There is no allegation in the answer that the defendants founded their claim upon a written instrument as being a conveyance of the premises, or upon the decree or judgment of a competent court.

It is claimed, however, upon this appeal that the deed from Johanna to her sons was a conveyance of the premises upon which these defendants could predicate a claim of title under section 369 of the Code of Civil Procedure. If this contention had been made before the trial court it is not recognized in the decision of that court, which is above set forth, and it cannot prevail here. In order to make such claim available it must appear that the defendants entered into possession of the premises upon a claim of title exclusive of any other right, founding this claim upon this deed as being a conveyance of the premises in question, and that there has been a continued occupation and possession of the premises included in the deed, after such entry, for twenty years. (Code Civ. Proc. § 369.) At the time this deed was given the parties to it were in possession of the premises, and the grantor Johanna continued in such possession until her death, in 1892. At the time the deed was executed the children were living on the premises with their mother, including these defendants. As we have seen, fifteen years ago James, one of the grantees in said deed, disappeared, and has not been heard of since. Mary died in 1868 and Charles died in 1870, neither leaving issue. These defendants, who were not parties to the deed, but seek

to avail themselves of it, continued to reside on the premises after the execution of the deed, as they had before. The mother could not claim under this deed as she was the grantor. James may be still alive, and is not a party to this action. Neither Charles nor James occupied the premises for twenty years after the deed was executed, and neither of them entered into possession under the deed. The Code requires, first, a deed, then an entry into possession under it, then a possession under such deed for twenty years. Neither of these last two conditions obtained. If it is claimed that these defendants hold as the successors to the interests of the deceased brother Charles, that claim would not carry the whole property (even if valid) which the trial court gave to these defendants as adverse claimants. The adverse possession, therefore, found by the trial court, cannot be predicated upon this deed. But, assuming that the deed might be made effective for the purpose claimed, had no judgment been obtained against the parties to that deed, as above shown, thereafter that judgment being obtained, was effective to destroy the claim of any of the parties to that deed to the property in controversy.

Section 1524 of the Code of Civil Procedure, referring to the effect of a judgment to recover possession of lands, provides that, " except in a case where it is otherwise expressly prescribed in this act, a final judgment in an action specified in this article, rendered upon the trial of an issue of fact, is conclusive, as to the title established, in the action, upon each party against whom it is rendered and every person claiming from, through or under him, by title accruing, either after the judgment roll is filed, or after a notice of the pendency of the action is filed in the proper county clerk's office, as prescribed in article ninth of this title."

The respondents claim, however, that this section of the Code was not in force at the time of the rendition of the judgment in 1871. This section of the Code succeeds chapter 485 of the Laws of 1862, which was in force at the time of the judgment in 1871, and the time of the entry of said judgment and of which this section of the Code is a substantial transcript. In the absence of such a statute as this declaring the effect of a judgment in ejectment, it has been held in several States that as ejectment was merely a possessory action, a judgment in ejectment, unless it was followed up by entry

under the judgment by the owner of the legal title, did not destroy the continuity of possession of the adverse claimant, and was, therefore, not available to defeat the claim of adverse possession. It is unnecessary, in the case we are considering under our statute, that the plaintiff should enter the premises or take proceedings to obtain possession under the judgment. The rights of the parties were definitely fixed by the judgment. Indeed, it is probable from the evidence in this case that the deed from Johanna to her sons was a contrivance to found an adverse possession upon a conveyance, which, being discovered by the plaintiff, the action in 1871 was brought and the rights of the parties fixed of record.

Eliminating this defense from the case, it only remains to inquire whether the evidence has established a defense under the other provisions of the Code (§§ 371, 372), which are as follows: "§ 371. Where there has been an actual continued occupation of premises, under a claim of title, exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely."

"§ 372. For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases, and no others:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved."

The respondent makes a point that neither the plaintiff nor those under whom it claims were ever in possession of the lands sought to be recovered so far as it appears by the evidence. This objection is answered by section 368 of the Code, which provides that a person who establishes a legal title to premises is *presumed* to have been possessed thereof within the time required by law; and this section states another proposition which is only declaratory of the law prior to the enactment of the Code, but is very important in the disposition of this case, that "the occupation of the premises by another person is deemed to have been under and in subordination to the legal title, unless the premises have been held and possessed adversely to the legal title for twenty years before the commencement of the action."

The burden is upon the defendants to establish this adverse possession and overcome the presumption that they are holding in subornation to the legal title. (*Doherty* v. *Matsell*, 119 N. Y. 646.) It is elementary that the mere occupation of premises by another does not create an adverse possession. It must be a hostile and defiant occupation as against the real owner. (1 Am. & Eng. Ency. of Law [2d ed.], 976, and notes; *Bliss* v. *Johnson*, 94 N. Y. 235. And see *Van Rensselaer* v. *Wright*, 121 id. 626.) After the judgment in 1871 the defendants are presumed to be holding under the plaintiff's title so far as they claim under the defendants in that judgment. (*Trufant* v. *White & Co.*, 99 Ala. 526.)

Where the claim of title is based upon a written instrument the description embraced in the instrument of the land fixes the boundaries of the land claimed to be held adversely, but where the claim is based upon possession merely under claim of title the premises must be protected by a substantial inclosure for twenty years or the land must have been cultivated and improved under a claim of title exclusive of any other right. The inclosure or the improvement and cultivation must clearly mark the boundaries of the premises. It must be open and notorious so that the parties and the public may have clear notice of such boundaries; a legal title cannot be destroyed by a fitful and uncertain possession, by a spasmodic and doubtful occupancy, but the acts of the party claiming to hold adversely must be clear, strong, positive and imperative.

It is not claimed in this case that these premises were ever protected by a substantial inclosure for a period of twenty years. For a time much short of that, there was a front fence protecting the premises from the street, built before the judgment in 1871, and it is significant that that fence after such judgment was permitted to rot down and disappear. It is also significant of the acquiescence of the defendants in the judgment and its effect, that no taxes were paid by any of the defendants or the persons under whom they claim after the rendition of such judgment. It is not sufficient to partially inclose premises and leave the most exposed portions open. (*Doolittle* v. *Tice*, 41 Barb. 181; *Pope* v. *Hanmer*, 74 N. Y. 240.)

In passing upon the question when land is usually cultivated and improved, the court, in *Doolittle* v. *Tice* (*supra*), says (at p. 185), after citing a provision of the old Code (§ 85), which is the same as

in the present Code: " The land must not only be ' cultivated,' but ' improved.' Both cultivation and improvement are essential to make out a case within the provision cited. Reaping alone can scarcely be considered as cultivating,   *   *   *   nor can the keeping up of a fence already made, mowing the grass and cutting brush (with no proof that it was designed to improve the land) be considered an improvement within the meaning of the statute.   I think the statute was intended to provide for the ordinary cultivation and improvement of lands in the manner in which they are usually occupied, used and enjoyed by farmers for agricultural purposes, sowing, plowing and manuring and by the erection of buildings, &c., which might add to their value."

But it is claimed by the respondents that an adverse possession has been established since the entry of the judgment in 1871 by an occupancy of these defendants of the premises for twenty-two years prior to the commencement of this action. The judgment found these defendants in possession. Does it appear that they claim to have held in hostility to the plaintiff's title for twenty years since then ? There is no evidence of that except their bare enjoyment of the property and putting out a few fruit trees ; they did not protect the property with substantial inclosures ; they did not usually cultivate or improve it ; they assumed no burden in connection with it ; they simply enjoyed it. We cannot say from this evidence when any hostile possession as against the plaintiff's title commenced on the part of these defendants. We are passing upon the whole evidence the same as the trial court could have done, in the absence of any findings of fact by the trial court.

We do not claim that this city lot should have been cultivated or improved to the extent that a careful husbandman would have done with his own property, but there should have been more than a bare occupation of the house and the things that were done to indicate by improvement and by cultivation the exact property which the defendants claim in the absence of a substantial inclosure.

The respondents make a point that, while there may be evidence that the New York Central Railroad Company acquired title to the lands in question, there is no evidence that the plaintiffs, the New York Central *and Hudson River Railroad Company,* ever acquired any title thereto or interest therein. This objection is answered at

page 82 of the case, which contains a printed statement pasted on the margin that the present plaintiff had acquired all the interest of the New York Central Railroad Company in the premises in question:

A difficulty appears in the case growing out of the decision of the trial court that we have quoted. The statement in that decision does not furnish the elements of such an adverse holding as will defeat the plaintiff's title under any of the provisions of the Code that have been cited. (See *Kneller* v. *Lang*, 137 N. Y. 589.)

Upon a careful review of the whole case, we are of opinion that the judgment should be reversed and a new trial granted, with costs to abide event.

Judgment affirmed, with costs.