the plaintiff's through trains over the Prospect Park road is a subject of inquiry, as to which the evidence furnishes no satisfactory answer.

While the fact that the proof and estimate of damages resulting from breach of a contract may be difficult is no reason why recovery should be denied, there must nevertheless be reasonable support in the evidence and the inferences derivable from it for the amount awarded.    Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264.    The plaintiff's loss from the alleged cause during the eight months preceding the trial is so difficult to determine that the estimate of damages must be founded on data not demonstrable to entire satisfaction; and, while it cannot be definitely said that they may or may not have amounted to the sum of $15,000 awarded by the trial court, we are able to make some deductions, which appear to us somewhat reasonable, from the evidence that the percentage of loss was such as to require the reduction of the plaintiff's recovery to $10,000. If the defendants had so desired, this issue, upon their application, could, by the direction of the court, have been tried by jury.    Lynch v. Railroad Co., 129 N. Y. 274, 29 N. E. 315.

The injunctive relief granted by the judgment should be modified as above suggested, and the damages recovered reduced to $10,000; and, as so modified, the judgment should be affirmed.    All concur.

---

### NEW YORK CENT. & H. R. R. CO. v. BRENNAN et al.

(Supreme Court, Appellate Division, Fourth Department.    December 18, 1897.)

1. EJECTMENT—SECOND TRIAL—RES JUDICATA.

Where a judgment in ejectment, after being affirmed, is vacated under Code Civ. Proc. § 1525, which provides that within three years after a final judgment in ejectment, upon the application of the party against whom it was rendered, upon the payment of costs, it must be vacated, and a new trial granted, if, in the new trial, the evidence is the same as in the former one, the former judgment is conclusive, unless there was error in admitting or excluding evidence, or unless a question of fact was raised which was overlooked on the former trial.

2. SAME—EVIDENCE—ADVERSE POSSESSION.

In ejectment, where the defense is adverse possession, evidence on behalf of the plaintiff that parts of the land embraced in the grant under which plaintiff claims had been occupied by the various grantees down to the present time is inadmissible, where none of the portions so occupied included any portion of that in dispute.

3. CONSTRUCTIVE POSSESSION.

There can be no constructive possession of land which is shown to be in the actual and hostile possession of another.

Ward, J., dissenting.

Appeal from trial term.

Action of ejectment by the New York Central & Hudson River Railroad Company against John Brennan and another.    Judgment for defendants, and plaintiff appeals.    Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Hiscock, for appellant.

William G. Tracy, for respondents.

FOLLETT, J.   This action—ejectment—was begun July 13, 1893, to recover a lot of land in the city of Syracuse bounded as follows: Beginning at the intersection of the south line of West Water street with the west bank of Onondaga creek; thence westerly, along said south line of West Water street, about 58 feet; thence southerly parallel with the west line of block 195, and along the easterly line of lands occupied by W. K. Niver & Co., about 130 feet, to the north line of the New York Central & Hudson River Railroad; thence easterly, along the north line of said railroad, about 101 feet, to the west bank of Onondaga creek; thence northerly, on the west bank of said creek, to the place of beginning.   This description embraces all of lot 9, in block 195, and a strip of land, about 8 feet wide at its north end and running to a point at its south end,—a triangular piece of land,—off from the east side of lot 8, in said block.   The plaintiff alleges in its complaint that it is the owner in fee of the premises. The defendants, in their answer, deny that the plaintiff is the owner in fee, and allege that they are the owners in fee of the premises. The defendants proved that they and their father, John Brennan, have been in possession of the lands in dispute since 1847, claiming title thereto, and holding it adversely to all the world.

This action has been twice tried.   The first trial resulted in a judgment for the defendants, which was affirmed (12 App. Div. 103, 42 N. Y. Supp. 529) January 8, 1897.   The plaintiff paid the costs, and an order was entered vacating the judgments and granting a new trial, under section 1525 of the Code of Civil Procedure.   It is conceded by the learned counsel for the plaintiff in his brief that "the testimony on the second trial, so far as admitted, was not changed from that upon the first trial."   The evidence taken on the first trial was read on the second trial.   This being so, the former judgment of the court is conclusive, unless the learned trial court erred in admitting or excluding evidence, or unless, as it is urged by the plaintiff, the testimony of Charles P. Clark raises a question of fact as to the adverse possession of the defendants, which testimony, it is asserted, was overlooked on the former appeal.

January 1, 1807, the state conveyed to Abraham M. Walton, by a patent dated that day, 250 acres of land, embracing the land in dispute, which patent was recorded in the office of the clerk of the county of Onondaga, in Book 125 of Deeds, at page 344.   This tract of land is now, and for many years past has been, subdivided into many different small lots, and is held by a great number of grantees, and forms part of the most thickly-settled portion of the city of Syracuse.   On the trial the learned counsel for the plaintiff stated:

"I now offer to show the occupancy of the premises from the patent by the people down to the present time,—not of these particular premises claimed by the plaintiff, but premises contiguous, and covered by the patent."

This offer was excluded, and the plaintiff excepted.   The offer was explained by statements made by the counsel, but its effect was in no respect changed.   It will be observed that the plaintiff did not offer to show that any of the grantees in the chain of title from Walton were ever in possession of lots 8 and 9, block 195, or of other lands em-

braced in grants conveying lots 8 and 9 with other lands.    At some time prior to November 1, 1853, a portion of the land embraced in the Walton patent was surveyed and designated as block 195, which was subdivided into nine lots, numbered from 1 to 9, inclusive, No. 9 and part of No. 8 being the land in dispute.    November 1, 1853, the sheriff of the county of Onondaga, pursuant to a judgment in partition, sold the nine lots to Chauncey Vibbard.    On the former trial it was held:

"A perfect chain of title, conveying the land in dispute from the state to Walton, and from him through mesne conveyances to Robert E. Temple, who acquired title January 9, 1846, is disclosed by the evidence; and it must be held that he was the owner of the lot in fee simple.    October 14, 1849, Robert E. Temple assumed to convey the land to John Townsend, and at this point the difficulty in the plaintiff's title begins.    At the date of this deed John Brennan, the father of these defendants, was in possession of the lands in dispute, and had been for two years."

These facts are not changed on this trial.    No evidence was given, on this or on the former trial, that John Townsend was ever in possession of the lots in dispute, or of any part of the land described in the grant to him.    December 20, 1850, John Townsend quitclaimed his interest in an undivided half of the disputed lands and of adjoining lands to Augustus James, at which date the widow and five children of John Brennan were in possession of lot 9 and part of lot 8; and no evidence was given, on this or on the former trial, that Augustus James was, or that his heirs were, ever in possession of any part of the land described in the grant to him.    As before stated, November 1, 1853, the sheriff, pursuant to a judgment in an action of partition brought by John Townsend, sold the nine lots in block 195 to Chauncey Vibbard, each lot being conveyed by a separate deed. At the date of this sale the widow and five children of John Brennan were still in possession of lot 9 and part of lot 8, and it was not shown, on this or on the former trial, that Vibbard entered into possession of any of the lots.    November 15, 1854, Vibbard assumed to convey the nine lots to the plaintiff.    At the date of this deed the widow and children of John Brennan were in possession of lot 9 and part of lot 8, and no evidence was given, on this or on the former trial, showing that the plaintiff ever had possession of the land in dispute.    But the case does show that the plaintiff entered into possession, under the Vibbard deed, of lots 1 to 7, inclusive, and part of lot 8.    The plaintiff's offer (which was excluded) was not to show that John Townsend, Augustus James, or Chauncey Vibbard was ever in possession of any part of block 195, or of any land conveyed with the land in dispute, but the offer was to prove that the grantees of various lots embraced within the Walton patent, the grants not including the lands in dispute, were in possession of their grants, which in no wise tended to show that Robert E. Temple, Augustus James, or Chauncey Vibbard was in possession of the lands in dispute or of any part of block 195.

The court distinctly held that the plaintiff might show that any grantee in a deed constituting the plaintiff's chain of title might be shown to have been in possession of any part of the land described in

the grant, provided the grant also embraced the land in dispute. The learned counsel for the plaintiff concedes this at page 19 of his brief, where he says:

"That is to say, if a conveyance covered the premises in question and other land, we might show that he entered into actual possession of the other land; and this was the extent to which he would allow us to submit proof."

No error was committed in rejecting this evidence.

But, had the plaintiff distinctly offered and had he been allowed to show that John Townsend conveyed lots out of the land granted to him (other than the land in dispute), and these grantees and their successors had been in possession of their respective grants since the dates of the conveyances by Townsend, it would not have helped the plaintiff, because John Brennan was in possession of the land in dispute when John Townsend took his title, and John Brennan, his widow, and heirs have ever since remained in possession, and the case would have fallen within the rule laid down in Thompson v. Burhans, 61 N. Y. 52; Id., 79 N. Y. 93. The same rule would have been applicable if the plaintiff had offered the same evidence in respect to the grants by Augustus James or by his heirs. In short, there can be no constructive possession of land which is shown to be in the actual and hostile possession of another.

The court did not overlook on the former hearing the testimony of Charles P. Clark. The only fact to which he testified tending to show that the plaintiff in this action ever exercised any act of ownership over the land in dispute was that, prior to the date of the deed to the plaintiff, the house occupied by the defendants' father stood somewhat further west and north of its present site, and that, when the plaintiff took its deed of block 195, which was November 15, 1854, the plaintiff moved the house a short distance to the southeast of the place where it had formerly stood, which was more than 38 years before the commencement of this action; and he also testified that, since about that time, the west bounds of the land occupied by these defendants, their mother, and father had been marked by a fence and by the east side of plaintiff's freight house. I am unable to see how this evidence presented any question of fact as to whether the plaintiff had been in possession of the land in dispute during the last 20 years. It should be observed that the retaining wall, which this witness testified was built about that time, is not on any part of the disputed premises, but is south of them.

Again, the evidence of this witness was not only contradicted, but is inconsistent. As appears by the maps in evidence, the north line of block 195, along the south line of Water street, between West street and Onondaga creek, is only 361 feet long. Clark testified that the freight house standing on this block extended between 300 and 400 feet east of West street, which would carry it across lot 8, and well on to lot 9. Later he testified that the freight house extended east to within about 100 feet of Onondaga creek, which would leave the east end of it about on the west line of lot 8, or about 261 feet east of West street. His recollection of the situation was very indefinite. But, putting the most favorable construction

on his testimony for the plaintiff, it did not tend to raise any question of fact over the issue whether the defendants and their ancestors had been in the undisputed possession of the premises, claiming title, for more than 20 years prior to the commencement of this action.

The judgment should be affirmed, with costs. All concur, except WARD, J., dissenting.