95    77
102   819

95    77
f108  355

**Wytheville.**

## KIMBALL & FINK, RECEIVERS OF THE N. & W. R. CO. v. GEORGE L. CARTER.

### JULY 22, 1897.

1. BILLS OF EXCEPTION—*Failure to Point Out Objections—Failure to Give Answers to Questions Objected to.*—The Court of Appeals will not consider bills of exception which do not point out specifically the objectionable ruling of the trial court. Nor will it consider objections to questions propounded to a witness which he is allowed to answer, unless the answers are given. The court cannot determine the relevancy or value of the evidence in the absence of such answers.

2. RAILROADS—*Enclosed Lands—What Constitutes Enclosures.*—Enclosed lands within the meaning of the statute requiring railroads to fence their roadbeds are lands surrounded by a fence, and a fence is a visible or tangible obstruction, which may be a hedge, ditch, wall, or a frame of wood, or any line of obstacle interposed between two portions of land so as to part off and shut in the land, and set it off as private property. The fence need not be a lawful fence.

3. RAILROADS—*Enclosures—Ditch Part of Way—Lawful Fence.*—The statute requires railroad companies to fence their entire right of way throughout the enclosed lands through which it passes. A ditch, though sufficient to prevent the passage of stock, does not answer the requirement of the statute, unless it extends the entire length of such enclosure.

4. RAILROADS—*Enclosed Lands—Several Tracts Constituting One Boundary.*—If the lessee from different owners of several tracts of land constituting one boundary has an enclosure around the entire boundary, then the lands are enclosed within the meaning of the statute requiring railroads to fence their right of way, and it is immaterial what changes are made by him in the fences separating the several tracts.

Error to a judgment of the Circuit Court of Wythe county,

rendered February 17, 1896, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Affirmed.*

The opinion states the case.

*Bolling & Stanley,* for the plaintiffs in error.

*Poage & Jackson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

George L. Carter brought an action of trespass on the case in the Circuit Court of Wythe county against Kimball and Fink, receivers of the Norfolk & Western Railway Company, to recover damages for the negligent killing by the Railroad Company of fourteen cattle in October, 1895.

The case was tried before a jury, which rendered a verdict for the plaintiff, assessing his damages at $572.55, upon which. the court rendered judgment. To certain rulings of the court during the progress of the trial the defendants tendered bills of exception, and obtained a writ of error from one of the Judges of this court.

The negligence alleged by the plaintiff, for which he seeks to hold defendants responsible, is the failure of the railroad company to fence its track, as required by law to do where it runs through enclosed lands.

The plaintiff is the lessee of several tracts of land lying contiguous to each other, owned by the Max Meadows Land & Improvement Company, J. G. Kent, John P. Sheffey, and the Misses Sayers. Through a portion of the land rented from John P. Sheffey the line of the Norfolk & Western Railway passes at the point where the accident occurred. To the south of the line of railway, and between it and Reed Creek, there is a field of about twenty acres, which had been planted in corn, and was

Opinion.

prepared to be seeded in wheat. Reed Creek at this point constitutes the boundary between the lands leased by the plaintiff from Sheffey and those belonging to Joe Kent, of which he was also the lessee. Upon the western boundary of the Sheffey line the farm of Christopher Holston was separated from it by a fence, shown by the evidence to be in a dilapidated condition. In the angle formed by this line of fence and the line of railway the plaintiff had constructed, partly upon the land leased by him of Sheffey, and in part upon the land of the Railway Company, stock pens, in which he had placed 200 head of cattle. During the night they broke down the pen, wandered upon the railway, and fourteen of them were killed by one of the trains of the defendant company.

During the progress of the trial counsel for the plaintiff asked the following question of the plaintiff, who was testifying in his own behalf: "Please explain to the jury the condition of that embankment where the fence runs down to the creek, as to the height of it at the Holston line?" This question, as stated in the exception, will be found at page 34 of the evidence. It is, in fact, at page 37, and marginal page 39.

Of the witness J. G. Kent the following question is asked: "You have been grazing this land for a long time, and attending these lands for a long, long time—haven't the fences on the farm ordinarily been sufficient to restrain stock?" This question is stated to be at page 70. It is, in fact, at page 60, and marginal page 75.

Of the witness Dobbins the following question was asked: "State to the jury, please, whether or not you, as the manager for Mr. Carter, and his overseer, have kept the wire and cattle-guards in there as far as you could?" Stated to be at page 174 of the record, but in fact at top page 125, and marginal page 179.

The court certifies that all of the foregoing questions were asked, and that the answers to the same will be found in the record, and that exceptions to each of said questions were noted at the time.

After much difficulty these questions were found in the record, not one of them at the place indicated in the exceptions, and the answer to no one of them in point of fact given. The exceptions, therefore, to these questions will not be considered. First, because the exceptions are not taken in the proper form. This court has heretofore said, and repeats, that it will not be subjected to the unnecessary labor and the danger of mistake by being required to search through a record in order to ascertain facts that ought to be embodied in the exception itself. See *Shott* v. *N. & W. R. Co.*, 92 Va. 34; *Norfolk & W. R. Co.* v. *Ampey*, 93 Va. 108.

In the second place, the exception here stated would in no event be considered, because, while the question is objected to, the answer is not given so as to enable the court to pass upon its relevancy and value. *Gray's case*, 92 Va. 772; *Union Central L. Ins.* v. *Pollard*, 94 Va. 146; and *Childress* v. *C. & O. R. Co.*, 94 Va. 186.

The plaintiff asked for the following instructions:

"No. 1. The court instructs the jury that if they shall believe from the evidence that the cattle of the plaintiff were killed or injured on the railroad of the defendants, operated by them as receivers, by the engine and cars of the said defendants, in charge of their servants, agents, and employees as charged in the declaration, and shall further believe from the evidence that the said cattle were killed or injured by the defendants, their servants, agents, and employees at a point on the said railroad, on which said railroad passes through the lands leased by the plaintiff from John P. Sheffey, and shall further believe from the evidence that the said lands were enclosed lands, and shall further believe from the evidence that the defendants, their servants, agents, and employees had failed to fence its right of way or road-bed through the said enclosed lands, so leased by the plaintiff, at the place of said injury, then the court instructs the jury that they shall find for the plaintiff, and assess his damages at such sum as to the jury shall seem right and proper, based on

the evidence as to the value of said stock at the time the same were killed or injured."

"No. 2. The court instructs the jury that if they believe from the evidence that the lands of the plaintiff at the point where the cattle mentioned in the declaration were killed or injured, were cleared, agricultural, or farming, or grazing lands, and were used as such at the time, and were so enclosed as to be reasonably safe for the purposes of such use, then the said lands were enclosed lands within the meaning of the law requiring the defendant company to fence its road-bed which ran through such lands."

And the defendants asked for the following instructions:.

"No. 1. The court instructs the jury that, although they may believe from the evidence that the plaintiff's lands were enclosed, and that it was the duty of the defendants to fence their track through said land, under the statute, yet, if the jury further believe that the cattle which were killed or injured came upon the track of the defendants' railroad, at a point where the plaintiff has a private crossing over and across said railroad, and were struck and killed or injured by the defendants' engine on said crossing, the defendant company, under the statute, could not obstruct the said private crossing by fencing across the same, and is not liable for stock killed or injured in consequence of coming on the track at such private crossing.

"No. 2. The court further instructs the jury that under the statute the defendant company is not bound to fence its track unless the lands through which it runs are enclosed by a continuous and lawful fence running up to the line of the right of way of the defendant company, and if they believe from the evidence that there was not such a continuous and unbroken line of fence sufficient to prevent stock passing through it, then the company was not bound to fence at this point, and they will find for the defendant.

"No. 3. The court instructs the jury that if they believe from the evidence that there was on the south side of the defendants' railway, and on each side of the private crossing near Cove-

creek bridge, a ditch sufficient to prevent the passage of live stock, then the said defendant was not required to fence its road-bed at said point, and they will find for the defendant.

"No. 4. The court further instructs the jury that the plaintiff cannot claim the line of Reed creek as a lawful fence, so as to relieve him of the duty to enclose his land, since the said creek has never been declared by the Legislature of Virginia a lawful fence.

"No. 5. The court instructs the jury that the statute requiring railroads to fence their road-bed applies only to the individual land-owners along its road where their lands have been properly enclosed, and if the jury shall believe from the evidence that the lands of the plaintiff were not enclosed, but that the enclosure sought to be set up in this case was made by means of the fences surrounding the lands of the Misses A. and E. Sayers, the Max Meadows Land & Imp. Co., J. G. Kent, J. P. Sheffey, and Mrs. Holston and others, then, that this enclosure, if there was one, is not sufficient, and they will find for the defendant."

Whereupon the court gave instructions Nos. 1 and 2 asked for by the plaintiff, and instruction No. 1 asked for by the defendant, but refused to give defendants' instructions 2, 3, 4, and 5, and to this action of the court the defendants excepted.

While the exception is in terms directed to both of the instructions asked for by the plaintiff, the argument of counsel for the plaintiff in error was addressed chiefly, if not altogether, to point out objections to instruction No. 2. Indeed, instruction No. 1 seems to be wholly free from objection as a proposition of law, and there is evidence in the record tending to prove each of the facts hypothetically stated in it, and upon which it is predicated.

The plaintiff's instruction No. 2 merits more careful consideration. It says to the jury "that if they believe from the evidence that the lands of the plaintiff at the point where the cattle were killed, were cleared, agricultural, or farming, or grazing lands, were used as such at the time, and were so enclosed as to

be reasonably safe for the purposes of such use, then the said lands were enclosed lands within the meaning of the law requiring the defendant company to fence its road-bed, which ran through such lands." As has already been said, the defendant in error was the lessee of several tracts of land. The accident occurred upon the tract leased by him of J. P. Sheffey, and the defendant in error in his testimony states unequivocally that it was enclosed land, and it is conceded that the right of way of the railroad company was not fenced. He states that "the lands are enclosed in two or three ways from different points. It so happens that I have about 5,000 acres of land, which lie in a body, and makes one enclosure from a point more than a mile east from where the wreck occurred. You strike a cattle-guard and a line fence between myself and J. C. and J. R. McGavock, and the Max Meadows Land Company and others." "Q. That is east, isn't it?" "A. Yes, sir; from that point you go around the entire boundary back to the Holston line and across this point, the Holston line, west of the cattle-pen." "Q. Do you go around the Sheffey farm?" "A. Yes, sir." "Q. Is the Sheffey farm divided into fields for agricultural and grazing purposes?" "A. At this point there is one fence a short distance west of the point where the cattle were first struck, running north, dividing what we call the 'large meadow' from the upper meadow or small meadow." "Q. These lands are all fenced in, aren't they?" "A. Yes, sir."

The plaintiff in error sought by cross-examination and otherwise to show that the lands were not enclosed because the division line between the Sheffey land and the adjoining tract belonging to Christopher Holston was in a dilapidated condition, a few panels of the fence having been washed away some months before the accident occurred. The field upon the Sheffey farm at the point of the accident had been cultivated in corn and had been sown, or was about to be seeded in wheat. The adjoining field upon the Holston farm was in a similar condition, and, therefore, the fence which had been carried away by high water

had not as yet been restored, there being no present occasion for it. It also appears in evidence that there is no fence along a part of Reed creek, where it separates the Sheffey and Kent lands, but as the creek runs through a channel six or eight feet deep, its banks are relied upon as a sufficient protection to crops and to stock; and it is to be borne in mind that the Kent land is contiguous to the Sheffey tract, and forms, together with it, an unbroken boundary of land, all of which is in the possession of the defendant in error as the lessee of its owners.

Were these lands enclosed within the meaning of the statute? The term "enclosed lands" is to be interpreted in accordance with the common and ordinary definition of the words used, there being nothing whatever to indicate that they were otherwise employed.

Webster defines "enclosed" or "inclosed" applied to lands as "separate from common grounds by a fence." Citing Blackstone.

Worcester defines it: "To part off or shut in by a fence; to set off as private property." Citing London Ency.　.　.

A fence is defined to be "an enclosure about a field or other space, or about any object; especially an inclosing structure of wood, iron, or other material, intended to prevent intrusion from without, or straying from within." (Webster.)

"A line of obstacle, as a frame of wood, a wall, hedge, or ditch interposed between two portions of land for the purpose of preventing cattle from going astray, or for protecting a field or property from unlawful encroachment." (Worcester.)

The Supreme Court of Vermont, in *Porter* v. *Aldrich,* 39 Vt. 326 (cited in 6 Amer. & Eng. Ency. of Law at p. 639), says: "The word enclosure imports land enclosed with something more than the imaginary boundary-line. There should be some visible or tangible obstruction, such as a fence, hedge, ditch, or something equivalent, for the protection of the premises against encroachment by cattle."

And in *Biggerstaff* v. *St. L. K. C. & N. Ry. Co.,* 60 Mo. 567,

it is said: "Where a statute requires railroad companies to fence their tracks along 'enclosed or cultivated fields,' it is not necessary, that, in order to be entitled to this protection, the enclosure of the fields should be by lawful fences."

This meaning was adopted in *Taylor* v. *Welbey,* 36 Wis. 42, cited in 6th Amer. & Eng. Ency. of Law, p. 638.

Enclosed lands, therefore, are lands surrounded by a fence; and a fence is a visible or tangible obstruction, which may be a hedge, ditch, wall, or a frame of wood, or any line of obstacle interposed between two portions of land so as to part off and shut in the land, and set it off as private property.

If the definition here given of "enclosed lands" is sound, and it seems to be amply supported by lexicographers and law-writers, as well as by adjudged cases, then instruction No. 2 was as favorable to the plaintiffs in error as they had a right to expect.

The foregoing observations sufficiently dispose of instruction No. 2 asked for by plaintiffs in error.

Instruction No. 1 asked for by plaintiffs in error was granted.

Instruction No. 3 is in the teeth of the statute. The court was asked to say to the jury that the presence of a ditch on each side of the private crossing near Cove creek bridge sufficient to prevent the passage of live stock excused the plaintiffs in error from the duty of erecting a fence, as required by sections 1258 and 1259. It may perhaps be that the ditch, so far as it extends, if sufficient to prevent the passage of stock, would excuse the plaintiffs in error from the duty of erecting a fence along the space protected by it, but there is no pretense that the right of way was ditched along its entire length through the field in question. The purpose of the statute, among others, is to preclude just such controversies as this instruction invites as to the particular point of entry upon the track by requiring the entire right of way to be fenced throughout the enclosure through which it passes. It might be conceded that the defendants were at the precise point designated in the instruction, within one of

the exceptions enumerated in section 1259, and yet the conclusion would not follow that the jury should find for the defendants.

Instruction No. 4 was properly refused, because there was no claim advanced that Reed creek was a lawful fence, nor any duty imposed upon the defendant in error to enclose any part of his lands by a lawful fence.

The fifth instruction asked for by the plaintiffs in error is that if the jury shall believe that the enclosure relied upon by the defendant in error was by means of fencing surrounding the lands leased by him of several owners, that such enclosure would be insufficient. The defendant in error was, as we have said, the lessee of several tracts of land constituting one compact boundary, the whole of which was in his occupancy and enjoyment for grazing and agricultural purposes. When his leases terminate, the condition of the fences dividing the several tracts, or separating the tracts into fields, may become a question between the defendant in error and his lessors; but if, in the enjoyment of these lands during the term for which he has rented them, the defendant in error should find it to his advantage to increase or diminish, to change or alter, the fields and enclosures, we do not perceive that it is a matter which at all concerns the plaintiffs in error. So long as the lands in the possession of Carter come substantially within the description of "enclosed lands," as those words are used in the statute, so long it remains the duty of the railroad company to fence its right of way where it passes through these lands.

We are, therefore, of opinion that there is no error in the action of the court in granting the instructions that it gave, and in refusing those which it rejected.

There was a motion to set aside the verdict as contrary to the evidence. In discussing the assignments of error with respect to the instructions, we have seen that there is evidence proving the killing of the stock of the defendant in error; that the right of way of the railroad company passes through the enclosed lands of the defendant in error, but that this right of way was not

fenced as the law requires; and the presence of these facts is suffi-
cient to support the verdict of the jury, no question being raised
as to the amount of damages.

Upon the whole case we are of opinion that there is no
error to the prejudice of the plaintiffs in error, and the judg-
ment of the Circuit Court of Wythe county is affirmed.

*Affirmed.*