H. W. Wright Lumber Company, Respondent, vs. Hixon and others, Executors, imp., Appellants.

*November 27 — December 15, 1899.*

*Corporations: Stock: Liens: Vested rights: Statutes: Amendments:* Bona fide *purchasers: Laches.*

1. W., a stockholder of plaintiff corporation, was indebted to it on a judgment obtained on a debt due prior to May 4, 1891, at which time that part of sec. 1751, R. S. 1878, providing that corporations shall at all times have a lien upon all shares of stock for all debts due from the owners to such corporation, was repealed. Thereafter the impleaded defendants acquired L.'s stock, by sale thereof in proceedings to enforce its pledge to them as collateral to notes given for money loaned him, and claimed to hold the stock as *bona fide* purchasers and by a right paramount to plaintiff's lien. The stock had never been transferred on the books of the company, and plaintiff had never waived its lien. *Held,* that an action to establish plaintiff's rights to the stock, and to determine the priorities of the parties, was a proper exercise of the jurisdiction of a court of equity.

2. Prior to the amendment of 1891 (ch. 414, Laws of 1891) repealing the right of the corporation to such lien, the right of plaintiff to the statutory lien, at all times and against all persons, for all debts due from the owner of the stock to the corporation, was absolute and enforceable against the world, and continued until the stock was transferred on its book or the lien waived; and every person dealing with the owner of the stock was bound to take notice thereof.

3. Plaintiff's lien, being a vested property right under sec. 1751, R. S. 1878, before ch. 414, Laws of 1891, was passed, and the right thereto and the action therefor being preserved by sec. 4974, R. S. 1878, such lien continued to exist notwithstanding such repeal, and the then amendment, permitting transfers to be made to *bona fide* purchasers without entry on the stock books, as to subsequent transactions, did not give defendants as *bona fide* purchasers an absolute title, good as against plaintiff's lien.

4. W. having been an officer of the plaintiff corporation up to within a few weeks of the time when defendants made the advances by virtue of which they acquired such stock, and nothing appearing to show that the defendants have suffered any loss thereby, plaintiff is not guilty of laches in enforcing its lien.

H. W. Wright Lumber Co. vs. Hixon and others.

5. CASSODAY, C. J., concurring, dissents· in so far as *Second Ward Savings Bank v. Schranck*, 97 Wis. 250, and *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488, are approved.

APPEAL from an order of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

Plaintiff is a Wisconsin corporation. Between August 15, 1885, and May, 1894, the defendant Rudolph Weidauer was a stockholder and officer of plaintiff. During that time he became indebted to it in the sum of .$2,660.85, of which amount $2,119.54 became due prior to May 4, 1891. The plaintiff obtained judgment against him for the amount first above stated on March 30, 1898, which remains unpaid. Weidauer at first owned 252 shares of plaintiff's capital. stock, of the par value of $100, and on January 2, 1892, by a distribution of surplus, became the owner of 246 other shares.

The complaint alleges the facts as stated, and further alleges that such stock has never been transferred on the books of the company, and plaintiff has never waived its lien, and that the defendants claim to be *bona fide* purchasers of said stock from Weidauer without notice of plaintiff's lien, and claim that, by reason thereof, their respective interests in said stock are superior to plaintiff's lien.

The defendants *Hixon* answered substantially as follows: That Weidauer ceased to be an officer of plaintiff in April, 1894; that he immediately set about making preparations to invest his means in business, to plaintiff's knowledge; that he had no material amount of means other than his interest in the plaintiff company; that he applied to the *Hixons* for a loan, and offered as security the 252 shares of stock; that between May 10 and July 7, 1894, the *Hixons* loaned him $13,500, and took an assignment of said stock as security, without any knowledge of plaintiff's claim, and believing that Weidauer's interest therein was clear and unincumbered; that Weidauer became insolvent in 1895,

and, not having paid the loan from the *Hixons*, on March 25, 1896, they sold the stock under the pledge, and became the purchasers thereof; that no action was commenced to foreclose plaintiff's lien until April 30, 1898. They also set up that plaintiff had an adequate remedy at law.

A demurrer was interposed to the answer, on the ground that it failed to state facts sufficient to constitute a defense, which was sustained. The *Hixons* have appealed.

For the appellants there were briefs by *Curtis, Reid, Smith & Curtis*, and oral argument by *A. H. Reid*. They contended, *inter alia*, that a court of equity has no jurisdiction to enforce the statutory lien which plaintiff claims under sec. 1751, R. S. 1878. *Herdegen v. Cotzhausen*, 70 Wis. 589; *Smith v. Shell Lake L. Co.* 68 Wis. 103; *Beall v. White*, 94 U. S. 386; *Aldine Mfg. Co. v. Phillips*, 76 N. W. Rep. 371; *Taggerd v. Buckmore*, 42 Me. 81; 1 Jones, Liens, §§ 94, 1012, 1033, 1038, 1561; *Doane v. Russell*, 3 Gray, 382; *Busfield v. Wheeler*, 14 Allen, 139; *Southern Michigan L. & C. Co. v. McDonald*, 57 Mich. 298; 4 Wait, Actions & Def. 328, 331; 1 Wait, Pr. 80. The right of defendants, first as *bona fide* pledgees for value, and later as purchasers at the foreclosure sale under the pledges, are paramount to the rights of the plaintiff to a lien, if any lien it ever had. *Williamson v. State*, 74 Wis. 265; *Smith v. Shell Lake L. Co.* 68 Wis. 89; *Haifley v. Haines*, 37 Mich. 538; *Au Sable River B. Co. v. Sanborn*, 36 Mich. 658; *Harrington v. Smith*, 28 Wis. 43, 59; *McGinley v. Laycock*, 94 Wis. 205, 209; *State ex rel. Bangs v. McClure*, 91 Wis. 313, 318; *State ex rel. Heiden v. Ryan*, 99 Wis. 123, 128; *Boyle v. N. W. M. R. Asso.* 95 Wis. 312, 323; Rapalje & L. Law Dict., "*Bona fide;*" *Fleming v. Sherry*, 72 Wis. 503, 509, 510; *Sanders v. McAffee*, 42 Ga. 250; Cook, Stock (2d ed.), §§ 381, 418, 444; *Driscoll v. West Bradley & C. M. Co.* 59 N. Y. 96; *Rough v. Breitung*, 47 Mich. 338; *Cincinnati, N. O. & T. R. Co. v. Citizens Nat. Bank*, 56 Ohio St.

351; *Farrell v. Shea*, 66 Wis. 561; *Conroy v. Bull*, 7 Wis. 408; *State ex rel. Crawford v. Hastings*, 10 Wis. 525.

For the respondent there was a brief signed by *Van Hecke & Smart*, and oral argument by *E. M. Smart* and *T. W. Spence*.

BARDEEN, J.   Upon the theory that the demurrer to the answer reaches back to the complaint, the defendants have attacked it on the ground that a court of equity has no jurisdiction to enforce the statutory lien which the plaintiff claims.   This lien is based upon sec. 1751, R. S. 1878, which says: "Every such corporation shall at all times have a lien upon all shares of stock for all debts due from the owners. to such corporation."   Another part of this same section provides that no transfer of the stock shall be valid, except between the parties thereto, until the same shall have been so entered upon the books of the corporation as to show the names of the parties by and to whom transferred.   It is argued that the lien so created cannot be enforced in equity. The statute points out no way in which the lien can be enforced.   No doubt it might be foreclosed by securing a judgment for the indebtedness and levying execution on the stock, but that would hardly be an adequate remedy to the plaintiff, under the circumstances stated.   The defendants claim to hold the stock as *bona fide* purchasers, and as such under a title paramount to the plaintiff's lien.   After a sale under an execution, the question of priorities would still have to be litigated, and no good reason appears why the lien may not be foreclosed, and the priorities of the parties determined, in one suit.   One of the ordinary branches of equity jurisprudence is to determine priorities among conflicting claimants.   Questions of this kind have frequently arisen in connection with transfers of shares of stock in business corporations.   2 Pomeroy, Eq. Jur. § 699.   If no one

but Weidauer claimed any interest in the stock in question, the sale on execution would afford a complete remedy; but, the defendants claiming a paramount right to the same, a suit to establish the plaintiff's rights, and to determine the priorities of the parties, would seem to be a very proper exercise of the jurisdiction of a court of equity. *Des Moines L. & T. Co. v. Des Moines Nat. Bank,* 97 Iowa, 668.

We come now to the question of whether the answer states a defense. Defendants' claim of priority rests upon the fact that by ch. 414, Laws of 1891, sec. 1751 was so amended that no lien was preserved to the corporation for debts due from stockholders, and a delivery of the stock certificate to a *bona fide* purchaser or pledgee for value, with a written transfer of the same, was sufficient to transfer the title as against all parties. This act went into force on May 4, 1891. Prior to this amendment, plaintiff had an absolute lien at all times, and against all persons, for all debts due from the owner of the stock to the corporation, and that lien continued until the stock was transferred upon the books or was waived by it. *Williamson v. State,* 74 Wis. 263. It was not a mere inchoate right to be perfected and enforced in accordance with some prescribed statutory method. It was a right, absolute in itself, given by positive enactment, and concerning which every person dealing with the owner of the stock was bound to take notice. Cook, Stock, § 523; *Bishop v. Globe Co.* 135 Mass. 132; *Bohmer v. City Bank,* 77 Va. 445. Such a lien is valid and enforceable against all the world. *Hammond v. Hastings,* 134 U. S. 401. As stated in 74 Wis. 263: "All persons purchasing the stock certificate or dealing with it in any manner were chargeable with notice of these provisions of the statute, and must have known that the plaintiff in error could only pledge his residuary interest in the certificate. There could be no complete and valid transfer of the stock, except between the parties thereto, until the stock had been transferred on the books of the corporation, and

the lien of the shoe company could not be impaired by the disposition which the plaintiff in error made of the certificate; for, so long as the plaintiff in error did not injure or impair the rights of the shoe company in the stock or certificate, he might pledge his interest in the same, whatever that might be." Cook, Stock, § 530. Such was the legal status of the plaintiff at the time ch. 414 became a law, at which time Weidauer's debt amounted to over $2,100. It would strike the ordinary judicial mind that this lien of the plaintiff, and the consequent disability on the stockholder to defeat it, was a valuable legal right, and became vested and available as soon as the debt was incurred. It is urged, however, that when the amended statute took away the lien and permitted transfers to be made to *bona fide* purchasers without entry on the stock books, such transactions, occurring after that date, gave to the *bona fide* purchaser or pledgee an absolute title, good against all the world. This is said to be the *only* conclusion that can result from a proper construction of this statute, and we are besought to meet the proposition squarely, and not evade it. We, then, have a piece of legislative prestidigitation in which the defendants seem to have a decided advantage. Whereas, the plaintiff *had* a lien, good against all the world, and of which all the world was bound to take notice, *now* the plaintiff has nothing, and the defendants become clothed with the rights and privileges of holding the stock clear of all claims. The omnipotent power of the legislature along some lines is admitted, but that they can destroy vested property rights is denied. That they intended to do this by this legislation is extremely doubtful. When the change in sec. 1751 was made, sec. 4974, R. S. 1878, provided that "the repeal of a statute hereafter shall not remit, defeat, or impair any . . . rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such . . . rights of ac-

tion created by or founded on such statute, liability where-
for shall have been incurred before the time of such repeal
thereof shall be preserved and remain in force, notwithstand-
ing such repeal, unless specially and expressly remitted,
abrogated or done away with by the repealing statute."
That the legislature may, by a prospective statute such as
this, save rights of action which have accrued is settled.
*Garland v. Hickey*, 75 Wis. 178; *Lincoln Co. v. Oneida Co.*
80 Wis. 267. Nothing appears in ch. 414 indicating an in-
tention to abrogate rights or rights of action which had
accrued under sec. 1751; hence we say that plaintiff's rights
continued the same as before that chapter was enacted. The
cases of *Dillon v. Linder*, 36 Wis. 349, *Shevlin v. Whelen*, 41
Wis. 88, and *Rood v. C., M. & St. P. R. Co.* 43 Wis. 146,
were based upon the ground that the saving statute only
preserved the *action*, and not the *right* of action. Sec. 4974,
including a portion not quoted, saves both the right of ac-
tion and the action. But were this not so, it being consid-
ered that plaintiff's lien became and was a vested property
right before the repealing statute was passed, under *Second
Ward S. Bank v. Schranck*, 97 Wis. 250; *Peninsular L. &
C. Works v. Union O. & P. Co.* 100 Wis. 488; and *Eau Claire
Nat. Bank v. Macauley*, 101 Wis. 304, we should feel com-
pelled to hold that such rights would continue to exist not-
withstanding such repeal. The discussion of the question
involved in these cases is applicable to the question before
us, and renders it unnecessary to review the ground covered
therein.

As a last resort, counsel concede that plaintiff's lien was not
destroyed by ch. 414, but contend that, under certain circum-
stances stated and thereafter to arise, it was provided that
the rights of a *bona fide* purchaser or pledgee might become
paramount to the rights of the lien-holder. Their argument
is ingenious, but specious. No intention is manifest that the
new legislation was to apply to existing vested rights, so as

to act as a limitation thereon. Had it been so intended, the limitation would have been only until the stock had passed into the hands of a *bona fide* holder, which might have been the very next day. Such a limitation would be so unreasonably short as to be void. The defendants' case is not helped out by the fact that the stock in question was not pledged until three years after the passage of the law. Counsel's contention reads into the law an intention that does violence to sec. 4974, and would as effectually cut off plaintiff's rights as though that section were not in existence. The right and the action being preserved, we fail to see anything in ch. 414 which expressly attempts to do away with or abrogate them.

Defendants' argument on the question of laches is equally infirm. Weidauer continued to be an officer of plaintiff up to within a few weeks of the time when defendants made their advances on this stock. Up to that time, as against defendants, the plaintiff was under no duty or obligation to enforce its lien. Nothing occurred between the time Weidauer severed his connection with plaintiff and defendants made their advances to him by which the defendants were prejudiced. According to the answer, Weidauer became insolvent before the notes given for most of the advances became due. The face value of the stock pledged is over $25,000, and there is no allegation that it is worth less than its par value. While it is true that the plaintiff has not shown any great degree of vigilance in enforcing its claim, it is equally true that nothing appears to show that the defendants have suffered any loss thereby.

*By the Court.*— The order of the circuit court is affirmed.

CASSODAY, C. J. I fully concur in the decision in this case, and in most that is said in the opinion of my brother BARDEEN. The language of ch. 414, Laws of 1891, is clearly prospective and not retroactive; and hence the statute cited

by him saves it from affecting the lien of the plaintiff which had previously become vested. I concur also that it could not have divested that lien even had its language been broad enough to have embraced it. But in so far as *Second Ward S. Bank v. Schranck*, 97 Wis. 250, 268–274, and *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488, 497, therein cited, hold that the legislature had no power to so far modify the remedy by attachment, execution, or garnishment as to enact, as in sec. 3, ch. 334, Laws of 1897, that where the process is not served or levied until within ten days of the time of making an assignment by the debtor for the benefit of his creditors, the same should, on making such assignment, be dissolved or discharged, I dissented, and still desire to withhold my approval. To that extent, some of the cases cited by the counsel for the defendants seem to be in point.