Miller, Appellant, vs. Chicago & Northwestern Rail-
way Company, Respondent.

*September 27—October 15, 1907.*

*Penal statutes: Amendment: Repeal: Accrued cause of action: Con-
struction of statutes: "Inclosure:" "Owners of inclosed lands:"
"Inclosed land."*

1. Any statute giving a right to recover of a person by civil action,
   either for the benefit of the public, or in its name for the benefit
   of a private person for his own use, or in the name of the latter
   for his own use, a sum by way of punishment or punitory
   damages, is a penal statute.
2. Rights under a penal statute, both as regards the right and a
   pending cause of action to enforce it, do not survive a repeal
   thereof without a saving clause, which need not necessarily be
   embodied in the amendatory or repealing act.
3. Sec. 1813, Stats. (1898)—denouncing a penalty on any railroad
   corporation operating a railroad over or through inclosed lands
   after its failure on the specified notice to construct fences, farm

crossings, etc.,—was amended by ch. 623, Laws of 1907, substituting a penalty of $10 "for each day after the expiration of said three months" in lieu of a penalty of $10 "for each and every locomotive that may thereafter pass through such land." *Held*, although the amendment contained no saving clause, nevertheless rights of action accruing before the amendment went into effect were preserved under sec. 4974, Stats. (1898).

4. The words of a statute which are plain in their literal sense and lead to no inconsistent or absurd consequences must be presumed to have been intended to have their plain and ordinary meaning, and such presumption must prevail under all circumstances.

5. A penal statute which is open to construction is to be limited rather than extended thereby in favor of the person sought to be penalized, so that in case of fair doubt as to which of two reasonable meanings readable out of the law was intended that one should be adopted which is most favorable to such person.

6. Penal statutes should be construed so as to effect the indicated legislative purpose.

7. An "inclosure" commonly means a particular space surrounded by a barrier of some sort.

8. The phrase "owner of inclosed lands" is only satisfied by an owner of land surrounded by a substantial fence, or its equivalent, separating his premises from outside territory.

9. The words "inclosed land" as used in sec. 1813, Stats. (1898), mean land so effectively separated from all other land as to render the same suitable for use by itself.

10. While the term "inclosure," as regards lands, means a tract of land surrounded by an actual fence, it does not necessarily mean a lawful fence, nor as to all situations a fence strictly so called, but a fence or something equivalent for protection of the premises against encroachment from without and restraint within.

11. Under sec. 1813, Stats. (1898), denouncing a penalty on any railroad corporation operating a railroad over or through inclosed lands after its failure on the specified notice to construct fences, farm crossings, etc., recoverable by the owner of such inclosed lands, an owner of lands cannot enforce the penalty where part of the line between his lands and his neighbors' is occupied by an old brush fence, down in places, or practically so, enabling cattle to readily pass and repass, or where between a creek on the owner's land and a neighbor's line the land was low and marshy, yet such as to allow cattle to pass over the owner's land to the creek, although the creek formed a substantial barrier to further progress of the cattle.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action to recover for alleged violations of plaintiff's rights under secs. 1810 and 1813, Stats. (1898).

The statutes referred to, at the time of the wrong complained of, required every railroad corporation operating a railroad in this state to construct and maintain suitable and convenient farm crossings of the road for the use of the occupants of the adjoining lands, and provided that "whenever any railroad corporation shall operate a railroad over or through inclosed lands and shall fail to construct the . . . farm crossings . . . required . . . proper for the use of such lands, the owner or occupant thereof may give notice in writing signed by him to such corporation, to be served as a summons in a court of record is required to be served on such corporation, to . . . construct the necessary farm crossings . . . and if such company, after being so notified, shall neglect for three months so to construct such . . . farm crossings . . . it shall be liable to pay to such owner or occupant ten dollars for each and every locomotive that may thereafter pass through such lands until so constructed. . . ."

Plaintiff alleged and proved ownership and occupancy by him of certain land specified, satisfying as to defendant the calls of the statute entitling him to a farm crossing and to the benefit of the penalty feature of the statute to vindicate such right in case of its having been violated, if such lands were inclosed, within the meaning of the statute. The complaint stated all facts requisite to a recovery for 2,102 violations of such right, upon the hypothesis that each time a locomotive passed over the land constituted a distinct violation giving rise to a cause of action to recover $10. There was a controversy on the evidence as to whether the notice to set the time running within which the corporation was required to construct the crossing was properly served. It was not con-

troverted but that after the alleged service the statutory period for building the crossing expired, and that thereafter between the 2d day of April, 1905, and the commencement of this action, if plaintiff's evidence was competent to prove the facts, there were 2,102 instances of the defendant operating a locomotive over and through the land. There was a further controversy on the evidence as to whether plaintiff's land was inclosed, within the meaning of the statute. The evidence on that subject was to this effect: The tract consisted of eighty acres; eighty rods wide north and south and 160 rods wide east and west. The right of way was a strip of land of the usual width, commencing about the center of the tract on the south side and running in a northwesterly direction through it. The west side of the east portion of the tract was bounded by the right-of-way fence. It was bounded on the north by Mr. Deacy's fence, there being a line fence running east from the right-of-way fence about one half of the distance to the northeast corner of the tract. For the balance of the distance there was an old brush fence, down in places, or practically so, enabling cattle to readily pass from such land to Mr. Deacy's premises. There was no fence on the east boundary of the land. There was a fence substantially on the south side thereof running east from the right-of-way fence to a creek about ten or fifteen rods east of the southeast corner of the tract. The course of the creek was northwesterly to and beyond the northeasterly corner of such tract. The strip of land between the creek and the east boundary of plaintiff's premises belonged to Mr. Knaup. It was low and marshy, yet cattle could pass over the same from plaintiff's land to the creek, but that formed a substantial barrier to their going further. At the close of the evidence the court directed a verdict in favor of the defendant upon the ground that it appeared conclusively that plaintiff's land was not inclosed, within the meaning of the statute. Judgment was rendered accordingly, from which this appeal was taken.

*R. N. Van Doren,* attorney, and *P. H. Martin,* of counsel, for the appellant.

*Edward M. Hyzer,* for the respondent.

MARSHALL, J.   The preliminary question is presented of whether sec. 1813, Stats. (1898), under which the action was brought, was not so substantially changed by ch. 623, Laws of 1907, as to supersede the former law, and consequently appellant's right to recover.   The new law amended such section by substituting the words "each day after the expiration of said three months" for "each and every locomotive that may thereafter pass through such land," thereby reducing the penalty for wrongfully failing to construct a farm crossing on inclosed land when duly requested to do so from $10 for each and every locomotive passing through such land during the period of default to $10 per day during such period.

We shall not spend much time on the subject of whether the law in question is a penal statute.   It was clearly designed to afford the right to recover in case of a violation of a landowner's statutory privilege more than actual damages; to recover such sum as to not only satisfy such damages, if any, but to serve as a punishment for the violation.   Any law giving a right to recover of a person by civil action either for the benefit of the public, or in its name for the benefit of a private person, or in the name of the latter for his own use a sum by way of punishment, or punitory damages, is a penal statute, and rights under it do not survive a repeal thereof without a saving clause therein both as regards the right and the pending cause of action to enforce it, if there be one, or other efficient saving law.

The rule on the subject mentioned is commonly stated in the books substantially thus:

"The repeal of a statute prescribing a penalty or forfeiture recoverable in a civil action, without a saving clause in the repealing act, takes away the right of recovery, even though

an action has been begun, for there is no vested right in an unenforced penalty until its actual recovery by final judgment." 26 Am. & Eng. Ency. of Law (2d ed.) 753.

That rule is applicable to all offenses and rights created by statute, but the saving clause need not, necessarily, as will be seen hereafter, be embodied in the amendatory or repealing act.

Nowhere is the general principle under discussion more definitely laid down than in the decisions of this court, as for instance in *Dillon v. Linder,* 36 Wis. 344, 349, the court said:

"Whatever a statute gives, which has not ripened into a vested right, a repeal of the statute may take away. 'The effect of a repealing statute I take to be, to obliterate the statute repealed as completely from the records of parliament, as if it had never been passed; and that it must be considered as a law that had never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded while it was an existing law.' "

That case, *Rood v. C., M. & St. P. R. Co.* 43 Wis. 146, and *Smith v. C. & N. W. R. Co.* 43 Wis. 686, are probably the most notable instances where such principle has been here applied.

Though there is no saving clause in the law of 1907, the question arises as to whether sec. 4974, Stats. (1898), does not apply. That provides as follows:

"The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefor shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute.

And criminal prosecutions and actions at law or in equity founded upon such repealed statute, whether instituted before or after the repeal thereof, shall not be defeated or impaired by such repeal, but shall, notwithstanding such repeal, proceed to judgment in the same manner and to the like purpose and effect as if the repealed statute continued in full force to the time of final judgment thereon, unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute."

It has been held elsewhere that the legislature cannot legitimately declare, in advance, the effect of future legislation on existing rights. *Mongeon v. People,* 55 N. Y. 613; *Mix v. Ill. Cent. R. Co.* 116 Ill. 502, 6 N. E. 42. Other courts have taken a contrary position in harmony with the decision of this court in *Dillon v. Linder, supra,* where it was held that a saving clause in a repealing act or in a general law as regards future legislation expressly saving existing rights and pending actions to enforce them, if any there be, will have that effect. In that case a right which existed under a repealed law at the time of such repeal was involved. It was sought to enforce it nevertheless, under sec. 33, ch. 119, R. S. 1858, which in terms saved pending actions but did not expressly save existing causes of action. By applying the rule of strict construction, perhaps to the limit of reasonableness, it was held that the right did not survive the repeal, and, therefore, that the general law saving pending actions was ineffective. That led, as the revisers' notes show, to a change in the law to the form we now have for the very purpose of preventing, in the future, the mere repeal of a statute from defeating existing rights. The court has heretofore held accordingly, notably in *H. W. Wright L. Co. v. Hixon,* 105 Wis. 153, 80 N. W. 1110, 1135. It seems, therefore, very plain that the case before us is governed by sec. 1813 as it formerly stood.

We now come to the vital question upon which the case turned in the court below, viz.: Is the call of the statute for "the owner or occupant" of "inclosed land" satisfied with anything other than the owner or occupant of a tract of land so surrounded by a substantial fence or barrier of some kind, reasonably calculated to turn or restrain domestic animals commonly so restrained, or otherwise suitable to the purposes for which the land is devoted, and separating such land at the boundaries thereof from the premises of others? If not, the ruling of the trial court is right, since it is conceded there was no fence or barrier on the east boundary of the land, and it is clear from the evidence there was none on a very substantial part of the north boundary.

It is claimed by the learned counsel for appellant that the land in question was suitably inclosed in common with other lands by permission of the owners thereof, and that such common inclosure satisfied the statute. In other words, by applying rules for judicial construction to the statute, it is contended it is not limited to inclosed lands in the sense of the land of each owner or occupant being so surrounded by a substantial barrier as to isolate it from other lands, enabling it to be put to use separate from the land of any other person. On the other hand, counsel for respondent contends that the language of the statute so clearly requires such segregation as not to be open to construction, and if it were otherwise, the rule requiring strict construction would limit the language of the law in harmony with the decision of the trial court.

It seems manifest that the statute must be read in the light of these two very familiar rules. A law which is plain in its literal sense and leads to no inconsistent or absurd consequences must be presumed to have been intended to have such meaning and such presumption must prevail under all the circumstances. *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420, 431, 83 N. W. 706. A penal statute which is open to construction is to be limited rather than extended

thereby in favor of the person sought to be penalized, so that in case of fair doubt as to which of two reasonable meanings readable out of the law was intended that one should be adopted most favorable to such person. The cases on this subject are very numerous. The following are but a few of them: *Stone v. Lannon,* 6 Wis. 497; *Page v. Johnston,* 23 Wis. 295; *Coleman v. Hart,* 37 Wis. 180; *Cohn v. Neeves,* 40 Wis. 393; *Wright v. E. E. Bolles W. W. Co.* 50 Wis. 167, 6 N. W. 508; *Perrault v. M., St. P. & S. S. M. R. Co.* 117 Wis. 520, 94 N. W. 348.

In the last case cited this language was used:

"Words should not be read into a penal statute not there by necessary implication for the purpose of broadening the effect thereof in the impairment of common-law rights or the increase of responsibilities over those of the common law. This court has many times said that the meaning of such enactments must be judicially restricted to their plain letter and spirit."

Chief Justice MARSHALL in *U. S. v. Wiltberger,* 5 Wheat. 76, speaking for the court on the same subject, used this language, which has been referred to so often as to be one of the most familiar of judicial expressions:

"The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."

Counsel for appellant suggest at this point the rule that a penal law, even, should be reasonably construed so as to effect the indicated legislative purpose. That is a companion principle to the one as to strict construction. It is in harmony therewith and, correctly understood, it explains but does not in reality limit.

The idea of strict construction of a law does not suggest attributing an unreasonable meaning thereto, but, as indi-

cated, respecting a penal statute, of two or more reasonable meanings found within the scope thereof, considering the purpose of the enactment and everything legitimately bearing on the question, it requires that one to be favored which limits the severity of the law. The boundary of strict construction is stated in *U. S. v. Wiltberger, supra,* thus:

"Although penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature."

It cannot be fairly denied but that the term "inclosure" commonly means a particular space surrounded by a barrier of some sort. As the learned counsel for respondent contends, all lexical definitions of such term are in harmony to that effect. The one in Webster's Dictionary is a fair type of all, which is substantially as follows: To surround; to shut in; to confine on all sides, as to inclose a field with a fence; to separate from common ground by a fence, as to inclose land.

Counsel for appellant after a most diligent search has been unable to favor us with any precedent of a judicial holding that the term "owner of inclosed lands" is satisfied by land surrounded with anything other than a substantial fence, or its equivalent, separating the premises from outside territory. Reference is made to *Kimball v. Carter,* 95 Va. 77, 27 S. E. 823, but that seems to be, upon a careful reading, rather against the counsel's contention. It was there said:

"Inclosed lands are lands surrounded by a fence, and a fence is a visible or tangible obstruction, which may be a hedge, ditch, wall, or a frame of wood, or any line of obstacles interposed between two portions of land so as to part off and shut in the land, and set it off as private property."

The facts of the case were that the defendant Carter was a lessee of several tracts of land from different owners, such tracts forming compact territory, and the whole was surrounded by barriers rendering the same suitable for grazing

and agricultural purposes apart from all other lands· and was occupied by the lessee. Under the circumstances it was held that the entire tract was inclosed land in possession of the defendant, within the meaning of the law.

*Haynie v. State,* 45 Tex. Crim. 204, 75 S. W. 24, is referred to. It was there simply held that it is not essential to satisfy the terms of a statute as to inclosed land that the same should be confined within an actual and sufficient fence; that it will do if the land "is in any manner inclosed sufficient to protect the same from depredation by artificial or natural means."

Special reference is made to *Illinois S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402, but the distinction there pointed out between an inclosure of lands appropriate to reasonably fit the same for some valuable use separate from all other lands; an inclosure marking the boundaries of adverse possession as matter of law, and such circumstances, not amounting to an inclosure, as may be sufficient as matter of fact to mark such boundaries, does not appear to have been efficiently observed. In either case, as there held, it is the boundaries of the land that are required to be effectually marked. Manifestly if that is required to be done by a fence or barrier equivalent thereto rendering the premises suitable for use, as it seems was contemplated by the statute in question, the *Bilot Case* is authority, both as to the character of the fence or barrier required and its location, in favor of respondent's position. The other cases referred to by appellant's counsel are in harmony with those we have discussed.

Counsel for respondent, reinforcing his contention that the plain, ordinary meaning of the term "inclosed land," as used in the statute, is land so separated from all other land as to render the same suitable for use by itself, cites numerous cases, including the following: *Kimball v. Carter, supra; Gundy v. State,* 63 Ind. 528, 530; *Doolittle v. Tice,* 41 Barb.

181, 184; *Pope v. Hanmer,* 8 Hun, 265, 269; *Union Pac. R. Co. v. Harris,* 28 Kan. 206, 210; *Dudley v. McKenzie,* 54 Vt. 685, 687; *Appeal of Hall,* 112 Pa. St. 42, 52, 3 Atl. 783; *St. Louis v. Babcock,* 156 Mo. 154, 56 S. W. 732; *Peck v. Williams,* 24 R. I. 583, 586, 54 Atl. 381; *Smith v. Williams,* 2 Mont. 195, 200. We have made original investigation sufficiently to be satisfied that the list of cases thus presented cannot be profitably extended. The industry of counsel has evidently brought to our attention the general trend of the authorities on the subject. They are to the effect, as held by this court in *Taylor v. Welbey,* 36 Wis. 42, where the statute as to distraining beasts doing damage within inclosed premises was under consideration, that the term "inclosure," as regards land, means a tract of land surrounded by an actual fence. That, of course, does not mean necessarily a lawful fence, within the meaning of the statute, nor as to all situations a fence strictly so called, but, as said in many cases, a fence or something equivalent for protection of the premises against encroachment from without and restraint within.

On the subject of whether the term "owner or occupant of inclosed lands" means owner or occupant of land inclosed with other lands, some of the cases cited seem very decisive against the position of the learned counsel for appellant. For instance, in *Doolittle v. Tice, supra,* the court said:

"I think the language employed means . . . inclosure around the land, without relying upon a distant and remote fence of a neighbor, inclosing that neighbor's land also. . . . It must be an inclosure of the lot alone, upon the lines claimed by the party, and not embracing premises adjoining. . . . It cannot fairly be claimed that the premises in controversy were protected by a 'substantial inclosure' because they were inclosed in connection with an adjoining farm. It was not the plaintiff's land, alone, but both together, which were inclosed; a portion of the land being claimed by the plaintiff, and another portion belonging to the adjoining owner."

To understand the quoted words it must be remembered that the court had under consideration a case involving a claim of adverse possession.

In *Appeal of Hall, supra,* it was held that to inclose land was to shut it in on all sides; and in *Peck v. Williams, supra,* that the word "inclosure" in its ordinary legal signification imports "land inclosed with something more than the imaginary boundary line; that is, by some visible or tangible obstruction, . . . for the protection of the premises against encroachment."

It does not seem profitable to extend this opinion by further reference to cases. The general effect of all the authorities seems to be that "inclosed land" means land effectively surrounded at the boundaries by a barrier of some sort for restraint and protection. The opinion could be extended to almost any length by quotations from legal opinions to that effect.

It seems from the foregoing that the meaning of the words under consideration is land owned by the person or occupant entitled to the farm crossing shut in on all sides from all other land by a fence or barrier, as above indicated. That is the plain literal sense of such words. At all events the most favorable view that can be taken of the language in appellant's favor is that two reasonable meanings can be read out of it: one that the land must be inclosed by itself with reasonable efficiency; and the other, that it must be so inclosed in common with adjoining lands by permission of the owner of the latter. "The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act." *U. S. v. Wiltberger,* 5 Wheat. 76. And such departure is not permissible at all in favor of severity if that does not seem to be plainly necessary to effect the legislative purpose. That renders an affirmance of the judgment necessary.

*By the Court.*—The judgment is affirmed.